PULLMAN and another *v.* B. & O. R. Co.

(*Circuit Court, D. Maryland.* ———, 1880.)

1. PATENT—PRELIMINARY INJUNCTION—ALLEGED INFRINGEMENT OF PAT-
ENT No. 49,992—RE-ISSUE No. 6,648—IMPROVEMENT IN SLEEPING
CARS.—Preliminary injunction refused: (1) Because, upon the affi-
davits produced, the court was not prepared to determine the validity
of complainants' patent, or the question of the infringement; (2) be-
cause the threatened damage was not of such irreparable character as
to require an injunction; (3) because the threatened damages were
easily ascertainable, and the defendant abundantly able to pay.

*Steele, Stirling, Carter, Lochrane, Thurston, Dickerson, Of-
field,* and *Lincoln,* for complainants.

*Latrobe, Cowen, Phillipp, Munson, Frick,* and *Cross,* for
defendant.

BOND, C. J.  The bill in this case is filed by complainants
to prevent the defendant company from using upon its road
certain sleeping cars of its own construction, which, it is
alleged, are infringements of the complainants' patent; and,
although the case has been ably argued, as if upon final hear-
ing, the motion really before us is for a preliminary injunc-
tion *pendente lite.*  To show the infringement, the complain-
ants have filed numerous affidavits and the sworn opinion of
experts; while to show the want of novelty in the patent,
and the prior use of what complainants claim as their pat-
entable combination, the defendant has filed counter affi-
davits.  Upon these papers, with the bill and answer, com-
plainants' affidavits in rebuttal, the motion is to be heard.
In order that the court might rightly understand what is
claimed as patented, and what is asserted to have been in
use before complainants' invention, we have been provided
with models of all antecedent attempts at making sleeping
cars.

Upon reading these affidavits, and the other papers in the
cause, we do not feel warranted in determining any question
of violation or infringement between these parties, but will
confine ourselves to the motion before us.   The proofs shown

us upon the hearing are all *ex parte*. There has been no cross-examination of witnesses; and, take it altogether, the violation of the complainants' patent does not seem to us so clear and without doubt as to authorize us at once to issue the injunction prayed for.

The interests involved on each side are very great; and were we to grant the motion upon evidence of the character now furnished by the complainants, contradicted by evidence of as low a grade by the defendant, we might do as much irreparable injury as we are asked to prevent.

This is a matter addressed to the sound discretion of the court. It is not a matter of course, upon the presentation of a patent, which *prima facie* establishes the right of the patentee to the thing patented, accompanied by an allegation that the defendant is violating it, that a preliminary injunction will issue; but it must appear likewise that, if the writ of injunction does not now issue, the complainants will be irreparably injured, and that no subsequent decree of the court can sufficiently ascertain and make good their damages.

For ten years the defendant company has, under contract with the complainants, been running sleeping cars of the complainants over their road. It has now built certain cars of its own, as it is alleged, after the patent of the complainants, which it purposes to run over the same line of road. What irreparable injury does this cause? The profits accruing to the complainants for the use of the cars of complainants hitherto run by defendant under the contract between them are known, and there can be no difficulty in ascertaining the loss to complainants by the use of the cars defendant proposes to run. But to grant this motion upon these *ex parte* affidavits would be to unnecessarily deprive the defendants of the use of a large capital invested in the building of these cars before the question of infringement is adjudicated. If the defendant company were insolvent and not answerable in damages, it would afford strong reason for the present interference of the court. But this is not pretended.

It is alleged, and urged strongly upon the court in argument, that the complainants have a system of contracts with

a large number of railway companies in the United States to run the cars manufactured under their patent exclusively over their roads, and that to allow the defendant company to run its own cars over its road and those connected with it would induce other roads to do the same thing, in violation of their patent. We do not see how this fact, if it be true, ought to induce us to grant this motion upon the evidence presented. If the complainants have contracts with other railroad corporations for the use of their cars, the refusal of defendants to enter into a similar contract can in no way affect their validity. If it be urged that the use by the defendant of its own cars breaks the unity of the Pullman system, the proof shows that it never was universal; that many trunk lines of railway have not entered into the system; and it does not appear to us to be shown to promise any such immediate and irreparable damage, if the defendant company does not so enter, as would warrant us in granting this preliminary injunction.

We decline to grant this motion, therefore,—*First*, because, upon the character of the evidence furnished, we are not prepared to determine the extent or validity of complainants' patents or their infringement; *second*, because there is, in our judgment, no case presented of such threatened immediate and irreparable damage as would warrant us in depriving the defendant, before final hearing, of the use of the cars it has built; and, *third*, because, in the judgment of the court, whatever damages the complainants may suffer between the filing of this bill and a final decree can easily be ascertained upon reference, for which damages, when determined, the defendant company is abundantly responsible.