The opinion of the court was delivered by
Nicholls, C. J.
The petition filed in this case is declared to be “the petition of, Samuel A. Marcuse, Abraham J. Wolf and Marcus J. Wolf, citizens of the State of Louisiana and residents of the Parish of Orleans, and conducting a commercial business in the City of New Orleans, under the firm name of B. J. Wolf & Sons.”
The action is directed against PI. Bratman and the New Orleans lailor-Made Pants Company, Limited, which is declared to be a corporation created under the laws of the State, and judgment in. solido is asked against this corporation and Bra'tman for the sum of five thousand dollars..
The petition sets forth that petitioners are now, and have been for some years preceding the filing of this suit, extensively engaged in the manufacture of clothing, making a specialty of the manufacture of jeans pants, for the country trade; that they have large means engaged in their said business, and employ upward of five hundred people in the conduct thereof; that in order to successfully conduct their business and meet competition with home manufacturers, as well as those situated outside of the State and city, petitioners are obliged to employ a large number of clerks, known to the commercial world as “drummers,” through whom the various portions of territory, whose trade petitioners solicit and supply, are canvassed, the said drummers being sent into said territory with samples from which orders are taken and forwarded to petitioners,- and, if accepted, filled by them, and the trade thus supplied; that the margin of profit in the conduct of said business, considering the capital invested and the use that is made of the credit of your petitioners, and in consequence of the rivalry and competition of local as well as foreign competitors, amounts to but a fair interest upon their said investments, and that in order to insure reasonable returns and fair profits, the volume of business is an important if not a controlling factor.
That in order to insure the disposition of their manufactured product, they are obliged to employ the class of clerks or drummers, hereinbefore referred to, and that in their selection petitioners at all times hold out advantageous employment and liberal compensation to men having the requisite qualifications to fairly present your peti *1359 Loners’ product to the trade and secure the sale thereof; and that at times petitioners have employed upward of fifteen clerks or drummers, assigning to each specific territory, and giving to each drummer the advantage, in the way of compensation, of commissions on all sales made by them in their respective territories, or orders forwarded to petitioners’ firm and secured primarily through said drummers’ efforts.
That among the most efficient and capable clerks or drummers in their employ, and whose services were profitable to them, enabling them to effect large sales of their manufactured product, was H. Bratman (whose full name is to petitioners unknown), and who for the period of upwards of three years was in the employ of petitioners, his efforts as salesman being profitable and, advantageous to petitioners, and for which they allowed him liberal compensation; that said Bratman secured employment originally with petitioners under a written contract, dated October 5th, 1895, the said contract being without term of employment, but limited, as recited therein, to enable said Bratman to demonstrate his ability as a salesman, with the view of granting him, if the result of his primary trip was satisfactory, permanent employment; that on December 3rd, 1895, said contract was renewed and extended, and again on June 20th, 1896; that xmder said contract the commissions allowed to said Bratman were fixed subject to certain limitations recited in said contract; that the employment of said Bratman with petitioners was fcontinued uninterruptedly from the period of his first emplbyment; that on May 14th, 1898, the said employment was continued, under written contract bearing said date, and which contract was to run for the period of twelve months from its date, expiring on May 13th, 1899.; that, under said contract, said Bratman was to receive a fixed commission for his services, subject to certain conditions therein recited, all of which will more fully and at large appear by reference to said contract, a copy of which is annexed hereto and made part hereof as Exhibit “A.”
That the said New Orleans Tailor-Made Pants Company, Limited, and its aforesaid officers and stockholders, in their representative as well as their individual capacities, in furtherance of their personal interests (they being, as petitioners are advised, believe and charge, the sole stockholders in said corporation), knowing the value of the services of said Bratman, and appreciating his ability as a drummer, *1360 the said corporation, dealing- in the same class of goods as those manufactured by petitioners, and in order to secure the advantages of the trade which petitioners enjoyed in the territory assigned .by them to said Bratman while he was in their employ, combined, confederated and conspired, the one with the other and in their joint interest, for their personal benefit and advantage, and to the injury, damage and wrong of petitioners, to clandestinely secure the services of said Bratman, and entice him from his employment with your petitioners; and that said Bratman, knowing well the measure of his contract obligations with petitioners, but induced by dishonest and sinister motives, yielded to the persuasions of his said co-defendants in committing a breach of his contract and violating the terms thereof to the great wrong, damage and injury of petitioners.
That being advised that negotiations were pending between the defendant company and its officers and stockholders, with said IT. Bratman, looking to the employment of the latter in violation of his aforesaid contract, petitioners immediately informed the said corporation, by letter addressed to it under date of November 12th, 1898, that petitioners were entitled solely and exclusively to the benefit and advantage of the services of said PI. Bratman, for the period of one year from the date of the aforesaid contract, and which would not expire until May 13th, 1899, and that, during the period of said contract, said Bratman had obligated himself to give petitioners his exclusive time, and to travel for no one else and in no other interest; that notwithstanding said notice and warning to said company and its officers and stockholders, they, without any warrant and in violation of petitioners’ rights, employed said Bratman, said employment to begin, as petitioners are advised, on December 15th, 1898, and in' this manner inducing said Bratman to violate his contract with petitioners, to the great damage, wrong and injury of the latter, and to the benefit and advantage of said New Orleans Tailor-Made Pants Company, Limited.
That fhei relations existing between them and said Bratman, and the contract obligations and rights arising therefrom, were disturbed and violated through the wrongful and malicious intervention of said New Orleans Tailor-Made Pants Company, Limited, and the officers and stockholders thereof; and that thereby said Bratman was wrongfully prevented from performing his duty during his relations with *1361 petitioners, arising out of his contract obligations; and that employment, as aforesaid, was after notice and with knowledge of the existence of the said contract.
That the territory assigned by them to said Bratman under his contract, and wherein they enjoyed a large and profitable business, has been invaded- by said Bratman, in the interest of the said New Orleans Tailor-Made Pants Company, Limited, and its aforesaid officers and stockholders, and under their direction, and that said bratman, taking advantage of the confidence which petitioners have enjoyed in said territory, is inducing (as petitioners are informed, believe, and so charge) the former customers of petitioners to divert their trade to the said defendant corporation, and this under the direction of said corporation and its officers and stockholders.
That they have used every reasonable effort to diminish their losses consequent upon the aforesaid attempted diversion of their trade through the employment of said Bratman by his said co-defendants, but have been unable to secure the services of a competent, efficient, and reliable man to represent their interests in the said territory previously assigned by them to Bratman, and to secure and hold the trade which petitioners have enjoyed in said locality for and during the period of said Bratman’s'employment, and which trade said defendants have been attempting to divert, to the prejudice and wrong of plaintiffs.
That repeated efforts have been made by the said New Orleans Tailor-Made Pants Company, Limited, and its officers and stockholders, to entice and seduce from the employ of petitioners other clerks and salesmen, whose services have been advantageous and profitable to petitioners, and who the said defendants believed would insure to them a part of the business which petitioners have built up and established by honest conduct and fair dealing; and that said defendant corporation, its agénts and stockholders, envious of the reputation and business enjoyed by petitioners, have, as aforesaid, clandestinely approached other employees of petitioners, using for such purposes, at times, persons other than those connected with said corporation to carry out and execute their dishonest purposes, and which facts petitioners stand ready to establish and prove On the trial of this case.
That being presently without a representative in the territory heretofore traveled over by said Bratman, for the reasons already cited, there is no way by which they can estimate the exact measure of damages sus *1362 tained by them in consequence of the wanton, malicious, and dishonest conduct on the part of the defendants herein, as aforesaid, and the result of their said conspiracy, save and except by taking as a basis the quantity of goods sold by the said Bratman, under his prior contract and during the period of time corresponding with the unexpired term of the contract which he is herein charged with violating, to-wit: for the months of Decémber, January, February, March, April, and up to May 10th, 1898; that the total amount of goods' sold by said Bratman during the period aforesaid aggregated the sum of $17,957.67; that, after allowing for all losses sustained as well as the payment of said Bratman’s commissions and the expense incident upon said sales, your petitioners, upon the said sales made by said. Bratman, made a profit oí ten per cent., or, on the aggregate amount, of $1,796.00; that the said estimate is conservative and represents, if the sales for the unexpired term of said contract were equal to the corresponding timé during the preceding year, the actual losses which petitioners sustained or would sustain in consequence of the deprivation of the services of said H. Bratman and his employment by said defendant company.
That in addition to the losses sustained hy them, as' aforesaid, their trade in the territory traveled by said IT. Bratman will be, in a measure, diverted, and it will take time, skill and money for petitioners to re-establish themselves after said territory has been gone over by said Bratman in- the interest of the defendant corporation, and the trade enjoyed therein by petitioners, diverted from them; that the aforesaid conduct of the said New Orleans Tailor-Made Pants Company, Limited, and its officers and stockholders, having been inspired by wanton, selfish and malicious motives, petitioners are entitled to recover, not only the actual damages which they have sustained, but also damages, the measure of which must be fixed by the jury and court, in consequence of said attempted inroads, dishonestly, upon the business relations and trade of petitioners; that petitioners are entitled to recover, in addition to their actual damages, as aforesaid, damages by way of punishment, punitive and exemplary, in an amount sufficient to partly compensate petitioners for the injury and annoyance to which they have been subjected, as well as to hold said defendants up as a warning against dishonest practices with servants and employees of rivals and -competitors in business; and that the measure of said latter named damages, independent of the actual losses suffered *1363 by petitioners, upon the estimates already given, and as a partial compensation to petitioners, and as punitory and exemplary damages, ought not to be less than five thousand dollars.
That the actions of said Bratman are without cause or provocation, and this to the knowledge of his co-defendants; that said Bratman is without means, and is, as petitioners are informed and believe, insolvent and unable to respond personally in damages sustained in consequence of his breach of duty — in the violation of his contract.
In view of the premises they pray that the New Orleans Tailor-Made Pants Company, Limited, through its proper officer, and each of the defendants herein named, in their individual capacities, be duly cited to appear and answer hereto; that after due and legal proceedings had, petitioners recover judgment against said corporation and against Charles Lob, Albert Lob, Godfrey Lob, and II. Bratman, jointly and severally, for the sum of five thousand dollars, as aforesaid, with interest from judicial demand; petitioners pray for trial by jury, and for costs and full and general relief.
Defendants excepted—
1. That said petition shows no cause of action.
2. That the parties plaintiff show on the face of said petition no interest in the cause of action, if any, propounded in said petition.
3. That the same is too vague, general and indefinite, to permit answer or admit truth.
4. That many of the allegations of said petition are so vague and indefinite that they do not put these defendants on their guard as to the facts intended to be established under them.
5. That allegations of said petition are conclusions of law and fact, so general and confused in their language, that defendants can not prepare their several defenses, and are not forewarned of the facts to be proven thereunder, from which the conclusions of law and fact are drawn.
6. That said petition is an illegal and improper joinder of distinct and different causes of action.
7. That it is an illegal and improper misjoinder of parties defendant.
8. That it is difficult, too much so, to condemn these defendants to answer, to say to whom the averments of the petition apply in some *1364 respects, and what facts are to be established against some of these defendants, and what against others of these defendants.
9. That the character of the action, the gravity of the charges therein made, and the seriousness of the results to these defendants demand, and the court should require full, fair and definite allegations, and not such as these allegations are, before requiring these defendants to answer.
The premises considered, defendants and exceptors prayed that these exceptions be maintained; the demand of the plaintiff rejected.
The court rendered judgment to the effect that “being of opinion that the petition ¡fails to disclose any interest on the part of plaintiffs in the cause of action set forth in said petition;
“ It was ordered, adjudged and decreed that there be judgment herein, dismissing the demand of plaintiffs, Samuel II. Marcuse, Abraham O. Wolf and Marcus J. Wolf, at their cost, without prejudice to the rights which the said plaintiffs may have as members of the commercial firm of B. J. Wolf & Sons, in an action brought by the said firm against defendants, upon the cause of action set forth in the petition herein.”
Plaintiffs appealed.
The motion of appeal was applied for by Messrs. Lazarus & Luce, as counsel “for plaintiffs,” on their suggestion that the judgment rendered dismissing the suit of “plaintiffs” was contrary to the law and the evidence, and the appeal was granted to the “plaintiffs.”
The appeal bond was executed by Samuel II. Marcuse, Abraham J. Wolf and Marcus J. Wolf, as principals.
The occasion of the giving of the bond is declared to be the rendition of a judgment against them in the suit of Samuel II. Marcuse, Abraham J. Wolf and Marcus J. Wolf, conducting business under the firm name of B. J. Wolf & Sons vs. New Orleans Tailor-Made Pants Company, Limited.
The condition of the bond * * * is that “Samuel H. Marcuse, Abraham J. Wolf, Marcus J. Wolf, shall prosecute their appeal, and shall satisfy whatever judgment may be rendered against them or that the same shall be satisfied by the proceeds of their estate, real or per-' sonal if they be east on the appeal, otherwise the surety should be liable in their place.”
*1365 Opinion.
Appellants are in error in their brief as to the ground upon which this suit was dismissed, in the lower court. We do not think the dismissal was due to the fact that the court presumed from the firm’s name, that B. J. Wolf was one of the partners in the firm of B. J. Wolf & Co., and therefore that the partnership was not in court, inasmuch as the concurrence of all the partners in the suit would be necessary for that purpose, in other words because of the non-joinder of B. J. Wolf in the petition.
We think the result would have been the same had B. J. Wolf been in fact a- partner in the firm, and had he been a co-plaintift', if the wording of the petition had been just as it is now.
We understand defendants’ objection to have been that the pleadings disclose a wrong done to a “partnership,” while the parties seeking redress for it, are the individual partners and .not the partnership itself.
Their contention is, that so long as a commercial partnership is in existence, suits in which it is concerned must be brought in the name of the partnership, giving its domicil and also the names and residence of all the partners. This position is based upon the proposition announced in Smith vs. McMicken, 3 Annual, 322; Robichaud vs. Barron, 14 Annual, 108, and Succession of Pilcher, 39 Annual, 365, that “a partnership once formed and put into action becomes in contemplation of law a moral being, distinct from the persons who compose it.”
“It is a civil person which has its peculiar rights and attributes. Une personne Active et morale separee des associes. Fictoe cujusdam personae vicem obtinet. (See the authorities cited in Trolong on Part., 368 et seq.)”
“Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law is the owner: it has a right to control and administer the property to enable it to fulfill its legal duties and obligations and the respective parties who associated themselves- for the purposes of participating in the profits, are not the owners of the property itself, but of the residuum which may be left from the entire partnership property after the obligations are discharged.”
*1366 It is urged that the petition in this case is not that of the “partnership” but of the individual partners, and fliat the reference made by the parties to themselves as “conducting a commercial business in the city of New Orleans, under the firm name of B. J. Wolf & Sons,” ‘were mere “words” of description.’” '
Defendants assimilate the suit to one brought in which the plaintiffs should have described themselves as stockholders conducting an insurance business in a corporation doing business in the name of the •“United States Insurance Company” (or any other- designated company).
The Code of Practice under neither the heading of “What persons are entitled to bring actions” (C. P. 102, eb seq.), nor of “Petition and Citation” (C. P. 169), describe in what language petitions brought on behalf of existing partnerships should be framed. Article 172 simply states generally that a petition must mention “the name, surname, and place of residence of the plaintiff”.
Article 165 referring to the courts before which actions are to be brought, declares:
“In-matters relative to partnership, as long as the partnership continues, in all suits concerning it, the parties must be cited to appear before the tribunal of the place where it is established, or if there are several establishments, before that of the place where the. obligation was entered into.”
Article 198 of the Code of Practice referring to the mode of service of a petition and citation declares that the service must be made “in suits against any commercial association, trading under a title or as a firm, on any of the partners in person or at their store or counting house by delivery to their clerk or agent”.
Article 446 of the Civil Code declares that “Corporations unauthorized by law or by an act of the Legislature enjoy no public character and can not appear in a court of justice, but in the individual name of all the members who compose it, and not as a political body, although these corporations may acquire and possess estates and have common interests as well as other private societies”.
Defendants admit that the petition would bring a partnership organized under the common law into court in a common law state, but they deny that it does so in a state where the civil law prevails.
*1367 The only decision brought to our attention by defendants upon this subject, or which we ourselves have found, is that of Key vs. Box, 14 Annual, 497, which is not directly in point.
In that suit Peyton A. Key brought suit again John Box. Defendant did not contest the correctness of plaintiff’s demand, but contended that it was extinguished by compensation to the amount of a claim which he set up against the firm of Peter Tellon & Co., of which he alleged the plaintiff to be a partner.
Then followed a reeonventional demand for the surplus of this claim.
This court said that “it was well settled that compensation did not take place between partnership and individual debts under the operation of Articles 2203 and 2204 of the Civil Code. So that John Box could not plead as an offset to the debt which he owed individually, his claim against the firm of P. Tellon & Co., although the plaintiff was liable solidarily for all the debts due by the firm”.
The court, in arguing, said: “The rule of law is that during the existence of the partnership the suit must be brought against the firm and not against the individual partners.' (C. P., 165; Davis vs. Eloi et al., 4 La., 107; Lambeth et al. vs. Vauter et als., 6 Robinson, 137.)
In Crozier vs. Hodge, 3 La., 359, this court, after stating that the surviving partner of a commercial partnership had not the right as such to sue for or receive the debts due to the firm and that all the parties composing it must join in the action, said that “it was not the case of one creditor in solido who had the right to receive the whole of the debt and who, perhaps might sue for it. That the obligation was made to a commercial firm and the parties composing it must join in the action, for the debt was due to the partnership collectively and not to one or others of the partners as creditors in solido."
There is no question that debts due to the individual partners of a commercial partnership and suits brought by, and judgments obtained by them, carry with them legal results and rights and obligations different from debts due to, and suits brought by,.and judgments obtained by, the partnership to which they belonged. (C. C. 2823.) Even though a judgment rendered in a suit brought in the name of the individual members of a commercial partnership might be shown from the pleadings and evidence to have been really a judgment rendered upon a partnership cause of action, and be made to enure to the benefit of the *1368 partnership, and even though any attempt to utilize it in favor of creditors of the individual partners might be successfully resisted, still it would be a better and more correct practice to so frame the pleadings as to do away with the necessity of any investigations of that character.
Plaintiffs’ pleadings show affirmatively that they were associated together conducting a commercial business under a firm name. Resulting from that fact followed the creation of a commercial partnership with a firm name. It was an entity for the purpose of rights and obligations, of suits and of judgments for and against it, differing from the individuals creating and composing it. Suits in its -favor should be brought as a partnership in the firm name, and as appearing through and represented by all of the partners composing the partnership, their full names and residence being set out in the petition.
Plaintiffs recite the fact that they were conducting a commercial business under the firm name of B, J. Wolf & Co., but they do not declare that in appearing in the suit they do so in their capacities as partners of the partnership, and as collectively representing and bringing the partnership into court.
It has been held that a succession is not properly brought into court as plaintiff, through a petition in which the petitioner describes himself as being the administrator of the succession, but does not declare that in appearing therein he does so “as” its administrator and as representing it.
We regret having to dismiss a suit brought on behalf of a partnership in a manner which has been so often acquiesced in, but as we believe the exception' to be well taken in this State, we are forced to sustain it.
This view of matters leaves the suit without a proper plaintiff and it would be inconsistent to proceed to the decision of other questions involved. It may not be amiss, however, in view of the possibiliy of another action, to say that it has been held that where a party has actually suffered a legal wrong and makes a proper statement of the facts of the case, a-mistake as to the precise relief to which he might be entitled, would not necessarily make the.demand demurrable (66 North Western Repr., 941), nor would an error made by a party as to the measure of damages applicable to a particular state of facts, carry with it the loss of the right to maintain an action upon that state of facts. (45 Pac. 218.)
*1369 Whether plaintiffs’ petition discloses or not a cause of action, or whether they had made any mistake or not, are matters we do not undertake to now pass upon.
For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the samé is hereby affirmed.
Rehearing refused.