LAND, J.
The present litigation is the sequel of a suit bearing the same title, which was dismissed because brought in the names of the partners instead of the partnership. See 52 La. Ann. 1357, 27 South. 893.
A new suit was instituted in the name of the partnership. Defendant pleaded the prescription of one year, and the plea was maintained. Plaintiffs appealed, and this court reversed the judgment of the district court, and remanded the cause for further proceedings. See 110 La. 427, 34 South. 590.
The original petition is set out in full in 52 La. Ann. 1357, 27 South. 893.
The case presented by the petition is that plaintiffs had in their employ one H. Brat-man, an experienced traveling salesman or drummer, under a written contract for his exclusive services for one year, commencing May 14, 1898, and expiring on May 13, 1899, the said Bratman receiving a fixed commission on sales made by him in lieu of salary or wages; that in November, 1898, defendants combined, confederated, and conspired to secure the services of said Bratman, and to entice him from his employment with plaintiffs, and that their said employs, induced by dishonest and sinister motives, yielded to the persuasion of his eodefendants in committing a breach of his contract with plaintiffs; that, being advised of the negotia-' tions pending between the defendants, plaintiffs, on November 12, 1898, gave defendant company, officers, and stockholders notice by letter of their contract with Bratman, and -its terms and conditions; that, notwithstanding said notice, said defendants employed Bratman, and induced him to violate his contract with petitioners, to their damage and injury, and to the benefit and advantage of defendant company; that the relations and contract obligations between plaintiffs and Bratman were disturbed and violated by the wrongful and malicious intervention of said defendants; and that thereby said Bratman was wrongfully prevented from performing his contract duties with plaintiffs; and that defendants employed said Bratman after notice and with the knowledge of the existence of said contract.
The petition further alleged, in substance, that while Bratman was employed by plaintiffs a certain territory was assigned to him, which he worked in the interests of plaintiffs, and wherein they enjoyed a large and profitable business; that said territory has been invaded by said Bratman in the interest of said defendants, and by their direction, and the former trade of plaintiffs therein diverted to the defendant corporation; that plaintiffs used every reasonable effort to secure the services of a competent drummer in said territory to hold their said trade therein, but were unable to do so, and said trade was diverted by said defendants to the prejudice and wrong of plaintiffs.
The petition further charges that defendants made repeated efforts to entice and seduce from the employ of plaintiffs other clerks and salesmen, whose services had been advantageous and profitable to plaintiffs, with the view of diverting a part of the business which they had established.
Petitioners further represented that, as they had no representative in said territory, for the reasons stated, during the unexpired *391 term of said Bratman, “there is no way in which they can estimate the exact measure of damages sustained by them in consequence of the wanton, malicious, and dishonest conduct on the part of the defendants herein as aforesaid, and the result of their said conspiracy,” save by taking as a basis the quantity of goods sold by Bratman under his prior contract from December 1, 1897, to May 13, 1898.
On this basis plaintiffs estimated their loss to be $1,796, and they also claim $3,500 as “punitive and statutory damages” and “damages by way of punishment, .punitive and exemplary,” for the unlawful conduct and acts of defendants, “inspired by wanton, selfish, and malicious motives.”
Defendants filed a number of exceptions, including one of no cause of action, and the judgment rendered thereon decreed:
“That the exceptions of no cause of action be maintained in so far as to order plaintiffs to amend their petition so as to make it conform, as to measure of damages, with the provisions of article 2750 of the Revised Civil Code of Louisiana and Act No. 50 of 1892, p. 72, § 2, and that in default of such amendment within ten days from the date of this judgment plaintiffs’ demand be dismissed, at their cost.”
Plaintiffs, within the delay, filed an amended and supplemental petition, in obedience to the order of the court, in which they alleged that Bratman had received $1,418.49 on account of his salary, but they prayed for judgment as in their original petition.
Defendants again excepted, one of the grounds being that plaintiffs had not obeyed the order of court, and judgment was rendered as follows:
“It is ordered that said exceptions be maintained in so far as to order plaintiffs to further amend their petition herein, within ten days, by setting forth the amount of commissions earned by and paid to defendant as salary during the term of his employment, and that, in default of said amendment being filed, plaintiffs’ demand be dismissed, with costs.”
Plaintiffs filed a second amended petition reiterating and affirming all of the allegations contained in their original and first amended petition, but, in obedience to the court’s order, alleged that Bratman earned commissions as salary in the sum of $1,672.-56; that between May 1 and November 5, 1898, he had been paid $1,510.44, and $165 prior to said May 1st, making a total of $1,-675.44 paid. They further alleged that they were entitled to recover double the amount paid as statutory damages, and also exemplary and punitive damages, the whole amounting to the full sum of $5,000. Wherefore plaintiffs prayed for judgment as in their original petition.
Defendants again excepted, but their exceptions were overruled, and, reserving the-benefit of their exceptions, answered, pleading the general issue, and averring that they employed Bratman in the usual course of business, specially denying any notice or knowledge at the time of his alleged contract with plaintiffs, and that they enticed said Bratman from his employment with plaintiffs for any purpose. Further answering, defendants specially denied that their employment of Bratman caused any damages to-plaintiffs, or, if it did, they averred that such damages were too remote and speculative to form a basis for recovery.
There was judgment in favor of the defendants, and plaintiffs have appealed.
In ruling on the exceptions of no cause of' action the court held as a matter of law that plaintiffs had no right to recover the damages-alleged in the petition, but were confined to the damages provided by article '2750 of the Civil Code and Act No. 50 of 1892, p. 72, and the court sustained the exceptions, with leave to plaintiffs to amend their petition in accordance, with the order of court.
Plaintiffs had their option to amend or not to amend. Having elected to amend, and by so doing acquiesced in the judgment, they waived whatever right they may have had to contest the ruling of the court. Originally, the sustaining of a demurrer put the-plaintiff out of court, but the practice grew *393 up in courts of equity to allow amendments on certain conditions. If the conditions were not complied with, the decree became final and effective.
The present rules of practice in chancery are set forth as follows:
“If a demurrer to a bill is sustained with leave to amend, and the amendment is not made within the time limited, the bill must be dismissed. Where a bill is amended after demurrer thereto has been sustained, the amendment operates as a waiver of the right to question the correctness of the ruling sustaining the demurrer.” 6 Ency. P. & P. p. 428.
The same rules apply at common law. Id. 359, 360, and notes.
A plaintiff has the right to stand by his original pleadings and appeal from the decree pronouncing them insufficient in law, or to acquiesce in the decree by availing himself of the leave contained therein to amend. He cannot do both, and must make his election at the proper time.
In this very case the court on the trial of the cause excluded all evidence to prove the kind of damages claimed in the original petition, to wit, loss of profits and exemplary or punitive damages. On the evidence the claim of plaintiff was limited to the damages fixed by the Code and the statute.
On the facts of the case defendant company, when they engaged the services of H. Bratman, did not know that he had a time contract with plaintiffs. It is true that they were notified of the contract before Brat-man commenced working for them, and that he offered to release them if they so desired. But the defendants referred the matter to their counsel, and on his advice decided to carry out their contract with Bratman, who testified that he had no intention of returning to plaintiffs’ service. Albert Lob had a number of conversations with Bratman, and testified that the latter said that his time was up on November 15th. Bratman had misunderstandings with plaintiffs, and was seeking new employment.
Godfrey Lob testified that Bratman twice stated in the presence of the attorney that he would not go back to Wolf & Sons.
Boiled down, the question before the court is whether the defendant company and stockholders are liable for damages for not releasing or discharging Bratman when they were informed of his time contract with plaintiffs.
Article 2750 of the Civil Code provides that the laborer who leaves his employer, before the time of his engagement has expired, without just cause of complaint, shall forfeit all the wages that may be due to him, and shall, moreover, be compelled to repay all the money he has received, either as due for his wages or in advance thereof, on the running year, or on the time of his engagement.
This article fixes the damages as between the laborer and his employer, but has no application to third persons.
Act No. 50 of 1892, p. 72, is a criminal statute, and its object is to enforce labor contracts or contracts of labor, and to punish third persons who willfully interfere therein, entice away, knowingly employ or induce a laborer, before the expiration of his contract, to leave his employer or the place rented. The statute provides that the third person violating its provisions shall be fined, and “shall be liable in double the amount of damages in a civil action which such employer or landlord may suffer by such abandonment.”
In Kline v. Eubanks, 109 La. 242, 33 South. 211, we held that the civil action provided by that statute would not lie until after a criminal conviction. We also considered the case under Civ. Code, art. 2315, which provides that “every act of man that causes damage to another obliges him by whose fault it happened to repair it”; and we held that no action was maintainable under said article where a third person had knowingly employed and enticed away a laborer before the expiration of the term of his contract
*395 We approved the doctrine that “an action cannot, in general, he maintained for inducing a third person to break his contract.” In addition to the authorities cited by us in that case, we extract from Cooley on Torts (2d Ed.) p. 5S1, the following statement of the accepted jurisprudence in our sister states, viz.:
“An action cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff; the consequence, after all, being a broken contract, for which the party to the contract may have his remedy by suing on it. But if the third person was induced to break his contract by deception, it may be different. If, for example, one were to personate a vendee of goods, and receive and pay for them as on a sale to himself, the vendee would have his action against the vendor, but he might also pursue the party who, by deceiving one, had defrauded both.”
The same author, under the title of “Injuries to Family Rights” and under the head of “Master and Servant” says:
“The wrongs which the master may sustain in that relation at the hands of others are substantially confined to being deprived of services. * * * The principles which govern the recovery have been sufficiently indicated in speaking of parent and child.” .
Under the subtitle of “Action by the Parent,” the same learned author says:
“Loss of service to the parent may be occasioned by enticing the child away, by forcibly abducting; the child, by beating or otherwise purposely injuring the child.”
It is apparent that the doctrine announced by Cooley originated at a time when the child and the servant were on the same footing, and “when serfdom and villenage largely prevailed.” Id. 261. The civil law is different. Our Code says:
“A man is at liberty to dismiss a hired servant attached to his person or family without assigning any reason for- so doing. The servant is also free to depart without assigning any cause.” Civ. Code, art. 2747.
The English authorities cited by plaintiffs’ counsel have not been followed in this country, and we do not think have any application to employes in commercial pursuits.
Our ruling in Kline v. Eubanks is in accord with the weight of jurisprudence in this country, and more in consonance- with the spirit of free labor. In that case we expressed the opinion that the act of 1892 applied only to agricultural laborers and tenants, and we may add that this is a matter of common knowledge,
While the Mosaic law, cited by counsel, declares that “thou shalt not covet thy neighbor’s servant,” it does not impose a pecuniary penalty for disobedience. It may also be noted that in the time of Moses servants were slaves, and were classed with the ox and the ass.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.