## Ossian Cameron, Appellee, v. Morris Barancik, Appellant.

### Gen. No. 17,105.

TORT—*maliciously inducing breach of contract.* Where a claim for personal injury has been assigned to an attorney under a contract for a division of the amount recovered, with a stipulation that any money received by the injured person in settlement of such claim, should be held as agent for the attorney, an action for maliciously persuading such person to break the contract cannot be maintained against a personal injury adjuster who caused a settlement to be made where it does not appear that he induced, or persuaded, or attempted to persuade such person not to hold the money as agent for the attorney.

Appeal from the Superior Court of Cook County; the Hon. J. C. McBRIDE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed with finding of facts. Opinion filed October 3, 1912. Rehearing denied October 17, 1912.

WILLIAM R. Moss, for appellant.

A. S. LAKEY, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee recovered from appellant a judgment for $500 in tort upon a declaration charging that appellant (defendant below) "wilfully and maliciously induced and persuaded" one Frank Rubish "to break his contract with the plaintiff herein for the purpose of injuring the plaintiff and depriving him of the benefits, interest and profits to which he was entitled under said contract." From that judgment the defendant appeals.

The contract referred to was in writing and is set out in full in one count of the declaration. In substance, it provides that Frank Rubish, having been injured through the negligence of the Illinois Steel

Company, has "made, constituted and appointed" Ossian Cameron his attorney, to bring suit for damages "or to compromise or adjust same in court or out of court;" that Rubish shall pay court costs and expenses, and pay Cameron as attorney's fees, one-half of the amount recovered "by any means;" to secure the same, Rubish assigns his "right, title and interest in and to said claim," and to any money "paid in settlement of said claim," to Cameron; and Rubish agrees to hold any money that he may receive on account of his claim "whether by settlement direct with me" or otherwise, "as the agent of said Cameron."

The evidence tended to prove that Cameron, on behalf of Rubish, brought suit against the Illinois Steel Company for $15,000 damages; that he also opened negotiations for settlement, with the attorneys for the Steel Company and with one Young, who was a claim agent or "safety inspector" of that company, resulting in his receiving offers of settlement beginning at $900 and ending at $1,500, all of which offers were declined, and Cameron thereupon prepared his client's case for trial. In the meantime, the appellant Barancik, whose business (he said) was "gents' furnishings and settling cases," approached Rubish, and as Rubish testified: "He tell me settle, want to settle. I tell him I got lawyer. I got my doctor, too—you settle him, $3,000 for myself and settle the doctor and settle the lawyer. Barancik and Young were present when I said that. They said I should not worry about anything, that they will settle the doctor and they will settle the lawyer, too." The Steel Company then paid Rubish $3,000, who permitted Barancik to retain $200 for his services, and when the case was called for trial, it was dismissed on a stipulation signed by Rubish in person. Soon after receiving the $3,000 Rubish removed to Gary, Indiana, and has never paid anything to Cameron. Rubish testified: "I never paid my lawyer anything. Why should I pay him? Because they

told me they will pay him." There is no affirmative evidence that Cameron ever tried to collect anything from Rubish. Two other clients of Cameron, who had similar claims against the same Company, testified that Barancik told them that Cameron was "no good lawyer," and that he, Barancik, would settle their cases for less "per cent" than Cameron would charge them.

Appellee's counsel contend, upon the authority of London Guarantee and Accident Co. v. Horn, 206 Ill. 493, and Gibson v. Fidelity and Casualty Co., 232 Ill. 49, that the facts above stated bring this case within the principle that "a man who induces one of two parties to a contract to break it, intending thereby to injure the other or to obtain a benefit for himself, does the other an actionable wrong." This is unquestionably the theory of the declaration. To this, appellant's counsel replies that the principle invoked by appellee is subject to the qualification or exception recognized in the Horn case, *supra,* and in Doremus v. Hennessy, 176 Ill. 608, viz: that while "it is a violation of legal right to interfere with contractual relations recognized by law, *if there be no sufficient justification* for the interference," yet lawful competition in trade or business is such a justification; and that the facts here proved show nothing more than a case of "legitimate trade competition." To put this contention in another form, the question thus raised is as follows: Is a personal injury claim adjuster a business competitor of a lawyer employed to prosecute personal injury cases? It would be interesting, and possibly instructive, to pursue this inquiry to a satisfactory conclusion; but as we have received no help from counsel in the solution of this problem, except such as may be afforded by the authorities above mentioned, we prefer to rest our decision of this case upon the more obvious ground that appellee has not made out a case under the principle he invokes, even if the exception be disregarded.

The gist of the charge in the declaration is that

Barancik maliciously induced or persuaded Rubish to break his contract with Cameron. We find no evidence that Rubish broke his contract. The contract clearly reserved to Rubish the right to settle his claim, and provides that if he does settle he shall hold all moneys received in settlement as the agent of Cameron. There is no evidence tending to show that Barancik ever induced, persuaded, or attempted to induce or persuade Rubish not to so hold the money, or not to pay over to Cameron the whole or such part of it as he may have been entitled to under the terms of his contract. The contention that the act of Barancik in inducing Rubish to settle without the assistance or knowledge of Cameron amounts to the same thing, in effect, as procuring the discharge of Cameron, is manifestly and conclusively answered by the fact that the contract anticipates and provides for just such a contingency. Moreover, by the contract in question, Rubish not only reserved the right to settle his claim, either directly or by "any other person, at his direction," but if the contract could be construed as in any way preventing him from settling or compromising, it would be void in that respect, N. C. S. R. R. Co. v. Ackley, 171 Ill. 113. A cause of action based solely upon an alleged breach of that part of a contract prohibiting such a settlement, could not be maintained, whether such breach were maliciously induced or otherwise. A similar conclusion was reached, on similar facts, by another branch of this court, in Cameron v. Illinois Steel Co., 162 Ill. App. 461.

This being the second trial of this case, we think it should be reversed without remanding. The judgment of the Superior Court will therefore be reversed with a finding of facts.

*Reversed.*

Finding of facts, to be incorporated in the judgment of this court:

The court finds from the evidence that there is no

proof that Frank Rubish has broken his contract with appellee, Ossian Cameron, as alleged in the declaration, and that Morris Barancik is not guilty of wrong-Rubish to break said contract, as therein alleged.