**HILDITCH et al. v. AMERICAN BUMPER CORPORATION.**

(District Court, E. D. New York. September 4, 1926.)

(No. 2657.)

**1. Patents ⬡328.**

Lyon patent, 1,198,246, claims 9, 14, and 18, *held* valid and infringed.

**2. Patents ⬡301(7)—Financial responsibility of infringer will not warrant refusal of temporary injunction, where infringement of valid patent is not seriously in doubt.**

Preliminary injunction restraining infringement of patent will be refused, where defendant is financially responsible, if there is substantial doubt of infringement or of plaintiff's right, but financial responsibility alone is insufficient to justify refusal.

**3. Patents ⬡298.**

Continued infringement by competitor after previous adjudication of validity is sufficient proof of irreparable damage to entitle plaintiff to preliminary injunction.

**4. Patents ⬡294—Preliminary injunction will be granted against infringement, where plaintiff, though in name licensee, is equitable owner of patent previously adjudged valid.**

Preliminary injunction will be granted in patent infringement suit, where patent is infringed, and plaintiff, though in form licensee, is equitable owner of patent previously adjudged valid, and neither plaintiff nor its predecessor have ever granted licenses, but have engaged in litigation to protect patent.

**5. Courts ⬡347—Prior to promulgation of equity rules of 1913, allegations of verified answer setting up affirmative defenses in avoidance did not constitute evidence.**

Prior to promulgation of equity rules of 1913, verified answer constituted evidence for defendant only so far as allegations thereof were responsive to allegations in complaint, and this rule did not apply to affirmative defenses in avoidance and competency, and weight of allegations was governed by rules relating to hearsay evidence.

**6. Patents ⬡312(1).**

In patent infringement suit, defendant had burden of proving its affirmative defense that it was licensee of patent.

**7. Courts ⬡347.**

Allegations of verified answer, not based on facts within affiants' personal knowledge, *held* insufficient to establish defense, even if given weight to which they would be entitled prior to new equity rules of 1913.

**8. Patents ⬡209(1).**

Negotiations for licensing defendant under patent *held* to contemplate execution of formal contract, and, no final agreement having been signed and delivered, no valid agreement existed.

**9. Attorney and client ⬡101(1).**

Right to settle suit belongs to client and not to attorney, and attorney has not such agency that, in default of other authority, he can bind claimant by his negotiations.

**10. Attorney and client ⬡72.**

Evidence *held* to show that equitable owner of patent did not authorize attorney to bind it in negotiations for licensing defendant.

In Equity. Patent infringement suit by Frederick W. Hilditch, as trustee, and another, against the American Bumper Corporation. On motion for preliminary injunction. Motion granted.

Jeffery, Kimball & Eggleston, of New York City, for plaintiffs.

Schechter & Lotsch, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity on United States patent No. 1,198,246, for buffer for motor vehicles, issued to George Albert Lyon, assignor to Lyon Non-Skid Company, and comes before this court on a motion by the plaintiff for a preliminary injunction.

The buffers described in the patent are "spring" or resilient bumpers having an open loop. The claims involved on the motion are Nos. 9, 14, and 18.

The patent was sustained in 1916 by Judge Manton, in the District Court, in the suit of Lyon Non-Skid Co. v. Edward V. Hartford, 247 F. 524, affirmed without opinion, in which suit claim No. 18, with claims other than Nos. 9 and 14, were sued on. The patent was again sustained in the Circuit Court of Appeals in this circuit, in the suit of Lyon et al. v. Boh, 10 F.(2d) 30, on claims Nos. 9, 14, and 18, the same claims as are presented on this motion.

In the last-cited case Circuit Judge Hough, writing for the court said, in speaking of the disclosure of Lyon, the patentee in the patent in suit:

"We think that the great merit of his invention is that he first thought out what may be called an all-spring buffer, something that would resiliently resist severe strains, and on release regain approximately its original form, although the strain were applied in center, or either end, or anywhere between. The means for utilizing this mental conception is essentially the open-ended loops extending over and in front of the wheels."

[1] The bumpers of the defendant in the suit at bar in no material respect differ from the so-called "Biflex" bumper held to infringe in the last-cited suit, in so far as the use of the invention of the patent in suit is concerned. I therefore hold that for the purposes of this motion the patent in suit must be held to be valid and infringed by the defendant.

As I understood his argument the attorney for the defendant, on the argument of this motion, conceded the validity of the patent and that it was infringed by the defendant. The defendant is opposing this motion on two grounds: (1) That there is no irreparable damage and injury to the plaintiffs. (2) The defendant is a licensee. These defenses I will consider in their order.

As I understood the defendant's contention, it is that, as one of the plaintiffs is only a licensee and there are outstanding licenses held by others, there can be no irreparable damage. I cannot agree with that contention. There is nothing in the evidence to show the existence of an established royalty in the licenses to which reference is made.

The licenses in question are: (1) A nonexclusive license granted to the Metal Stamping Company on November 30, 1925. None of the terms of this license are given. (2) A nonexclusive license, with right to grant sublicenses, to American Chain Company, Inc., one of the plaintiffs. None of the terms of this license are given. (3) A license to Badger Manufacturing Company. None of the terms of this license are given, and it is stated that it has been canceled.

From the evidence it appears that the only outstanding license, other than that granted to American Chain Company, Inc., is the nonexclusive license granted to Metal Stamping Company on November 30, 1925, the terms of which are not disclosed.

The plaintiff Frederick W. Hilditch, as assignee of the patent in suit, has made a declaration of trust in favor of the plaintiff American Chain Company, Inc., in which he recites that, whenever requested by said American Chain Company, Inc., said Hilditch will transfer to the said American Chain Company, Inc., or to those designated by it, all recoveries under the patent, and that he (Hilditch) holds all rights under the patent for the sole benefit of the American Chain Company, Inc. Therefore the plaintiff American Chain Company, Inc., while in form a licensee, is the equitable owner of the patent.

The plaintiff American Chain Company, Inc., and the defendant American Bumper Company, are both manufacturers of bumpers and competitors in business. The defendant asserts that the courts have held that, where a plaintiff has granted licenses to others, there should be no preliminary injunction, as any damages would be measured by the license fee, and cites in support of its assertion Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co. (C. C.) 86 F. 338; but that case falls far short of supporting the broad statement of the defendant, and is clearly distinguishable from the case at bar.

In that case the complainant was not engaged in manufacturing the patented elevators, but prior to the commencement of the suit, by resolution of its board of directors, it established a royalty or license fee of $250 for each elevator in which the patented invention was used. Therefore the complainant was not deprived of any business by its infringement, there was an established royalty, the damages could easily be ascertained, it was shown affirmatively that the defendant was financially able to pay all possible damages, and under these conditions the injunction was denied.

[2] In the suit at bar the defendant is in daily competition with the plaintiffs; there is no proof of any established royalty, nor is there any affirmative evidence of the financial standing of the defendant. But even if the defendant is of the highest financial standing, that alone furnishes no reason why it should be allowed to continue the infringement, because, as I read the law, it is when the defendant is responsible and a substantial doubt of infringement exists, or where the plaintiff's right is doubtful, that a preliminary injunction will not be granted. Hallock v. Babcock Mfg. Co. (C. C.) 124 F. 226.

[3] That irreparable damage should be shown in order to obtain the injunction sought in the suit at bar may be accepted as true, and it seems to me that the continued infringement of a patent which has been adjudicated as valid by the Circuit Court of Appeals of this circuit, by a defendant who is a competitor of the plaintiff, furnishes proof of such damages, and that the rule of Allington & Curtis Mfg. Co. v. Booth, 78 F. 878, 24 C. C. A. 378, is still the law in this circuit.

The cases cited by defendant are all clearly distinguishable from the case at bar. In Pullman v. B. & O. R. Co. (C. C.) 5 F. 72, the court declined to grant the injunction because upon the character of the evidence it was not prepared to determine the extent or validity of the complainant's patents or their infringement, and in its judgment there was no case of irreparable damage presented which would warrant the court in depriving the defendant, before final hearing, of the use of its cars, because the complainant had for 10 years been running its cars over the defendant's road, and if the defendant, by running cars built by it, infringed the complainant's patent, the damage could be readily ascertained. In New York Grape Sugar Co. v. American Grape Sugar Co. (C. C.) 10 F. 835, the complainant did not use its own patents, but only granted licenses to others.

In Jefferson Electric Light, Heat & Power Co. v. Westinghouse Electric & Mfg. Co., 134 F. 392, 67 C. C. A. 189, the defendants set up a substantial plea of res adjudicata, based upon a decree in a former suit, supported by proofs which included an admission by the plaintiff itself. It has already been pointed out how the case of Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co., supra, is distinguished. In Gillette Safety Razor Co. v. Durham Duplex Razor Co. (D. C.) 197 F. 574, the defendant denied infringement and had a patent of its own.

In Rousso v. Barber (C. C. A.) 276 F. 552, the defendant's devices were made under its own patent. The complainant's patent had not been adjudicated with respect to the defendant's invention, although they were co-pending applications in the Patent Office, that the defendant's patent had the presumption of patentable difference and of validity.

In Hall Signal Co. v. General Ry. Signal Co., 153 F. 907, 82 C. C. A. 653, order granting injunction reversed, among the reasons being that the patents had never been adjudicated, that some were alleged not to be infringed, that the complicated character of the subject-matter made it peculiarly a case where the court should have the benefit of the opinion of experts, that no acquiescence was proved, and in addition to all of which that the ample responsibility of the defendant was conceded.

[4] In the case at bar neither plaintiff nor its predecessor have been in the habit of granting licenses; they manufactured the patented invention, and have borne the expense of litigation to protect it; the validity of the patent has been sustained, and is infringed by defendant's product. The rule laid down in General Electric Co. v. P. R. Mallory & Co. (D. C.) 286 F. 175, should control in the case at bar.

[5] The defendant contends that it has a license, and attempts to give to its verified answer, which contains its allegations of license pleaded as a separate defense, the weight of one credible witness, and therefore to be taken as true, unless outweighed by a preponderance of evidence, and cites Wilcox v. El Banco Popular de Economias, etc., 255 F. 442, 166 C. C. A. 518, and Campbell v. Northwest Eckington Co., 229 U. S. 561, 33 S. Ct. 796, 57 L. Ed. 1330. To accomplish this the defendant invokes the old equity rule of practice concerning the waiving of an oath to the answer by the bill.

Prior to the promulgation of the Supreme Court equity rules of 1913, an answer constituted evidence on behalf of the defendant as to charges of evidence and interrogatories in the complaint, in so far as the answer was responsive thereto. By virtue of rule 25 of the 1913 rules, the complaint was stripped of its character as a means of obtaining discovery of evidence, that function being performed by interrogatories under rule 58.

Under the practice prior to 1913 it was the answer, considered as a response to interrogatories and charges of evidence in the bill, that constituted evidence for the defendant, and not the answer considered as a pleading. Campbell v. Northwest Eckington Co., supra, cited by defendant, was a case which was commenced prior to 1913, and is authority for the practice prior to 1913, but not for defendant's contention.

Wilcox v. El Banco Popular de Economias, etc., supra, cited by defendant, was a case the date of the commencement of which does not appear; but, whether properly or improperly, the complaint therein did specifically interrogate the defendant, and the complaint therefore combined the two functions of a pleading and an instrumentality for discovering evidence. Under those circumstances the answer was evidence for the defendant, and such effect could be obviated only by waiver of oath as provided in former equity rule 41.

The rule invoked by defendant applied only to statements in the answer which were responsive to matter contained in the complaint, and never under any circumstances applied to affirmative matter set up by the defendant in avoidance of the allegations in the complaint. 21 Corpus Juris, § 695, p. 563. The statements in the answer were governed as to their competency and weight by

the rules relating to hearsay evidence, and if it appears that the statements were not within the knowledge of the person making the oath, they would have no effect. 21 Corpus Juris, § 699, supra, and section 705, p. 572.

The answer is verified by the vice president of the defendant, but from his answering affidavit it does not appear that any of the circumstances relied on to prove a license are within his personal knowledge. As evidence it does not seem to me that his statements in the answer would be admissible.

[6, 7] Be that as it may, and according to the answer the greatest weight that it could acquire, even with its oath, in my opinion the license alleged is not proved. The burden is on the defendant to prove its affirmative defense.

This it has failed to do, because, giving to the answer all the weight that could be given to it as evidence, even prior to the equity rules of 1913, by virtue of the oath, in the face of the affidavit made by the one who made the oath, from which it does not appear that the facts are within his personal knowledge, and the affidavit of Mr. Schechter, much of which is upon information and belief, since concededly he did not participate in the conference with Mr. Morris, vice president of the plaintiff American Chain Company, Inc., it falls far short of convincing me that any license such as is alleged was ever made, and therefore Armat Moving Picture Co. v. Edison Mfg. Co., 125 F. 939, 60 C. C. A. 380, is not an authority, because I am not laboring under any doubt.

[8] The affidavit of Mr. Hilliard, supported as it is by the affidavit of Mr. Jeffery, the paper submitted by Mr. Hilliard to defendant's counsel, described as it is on its face as "an outline form" for a license agreement, incomplete as it is in some of its details, together with the letter from defendant's attorneys, undated, but delivered on July 30, 1926, in which it is stated: "In view of the fact that a settlement of the controversy is in progress, we are enclosing herewith stipulation adjourning the hearing for a period of two weeks, and also extending the time to answer and file affidavits"—notwithstanding the fact that it is now claimed that the license had been granted as early as July 16th, convince me that the question of license never went beyond the stage of negotiations, and that it was always contemplated that the final outcome of the negotiations, if favorably concluded, was to be the execution of a formal contract, and no such final agreement having been actually signed and delivered, no valid agreement exists. Barber-Colman Co. v. Magnano Corporation (C. C. A.) 299 F. 401.

[9] That there never was a meeting of the minds, even between counsel for the respective parties, as to the proposed license agreement, seems clear to me; but, even if the attorneys had agreed, the right to settle an action belongs to the client and not to the attorney, and the mere fact that one is an attorney at law does not invest him with such an agency that he can bind his client in default of other authority by his negotiations for a license. General Electric Co. v. Brite-Lite Lamp Co. (D. C.) 290 F. 967.

[10] That Mr. Morris, vice president of the plaintiff American Chain Company participated in the original conference does not lend color to the defendant's claim that the said plaintiff had given any power as an agent to Mr. Hilliard to bind it in his negotiations; on the contrary, the fact that Mr. Morris participated, and that Mr. Hilliard was bound to communicate with him, even when he was abroad, with reference to details, conclusively shows that the said plaintiff, through its vice president, was controlling the negotiations and had not constituted Mr. Hilliard its agent with authority to bind it. The minds of the parties never met, and no valid and binding license was ever given to the defendant by the plaintiff American Chain Company, Inc.

The motion will be granted, and the injunction will be issued, upon the plaintiff giving security in such amount as may be determined by the court on hearing counsel for the respective parties, in room 323, Federal Building, Brooklyn, New York, either on September 9 or 15, 1926, at 12 o'clock noon, as counsel for plaintiff may desire, at which time the order to be made herein should be settled on notice.