**Douglas MacLEOD and Thomas L. Cashion, Plaintiffs,**

v.

**VEST TRANSPORTATION COMPANY, Defendant.**

**No. GC6361.**

United States District Court
N. D. Mississippi,
Greenville Division.

Sept. 25, 1964.

Philip Mansour, Greenville, Miss., for plaintiffs.

W. C. Keady, Keady, Campbell & De-Long, Greenville, Miss., for defendant.

CLAYTON, District Judge.

Clemmie J. Adams was a member of the crew of a motor vessel and its tow operating on the Mississippi River near East Muscatine, Illinois, when he died as a result of a marine casualty on September 27, 1963. This vessel was owned and operated by Vest Transportation Company. Adams was survived by his widow, Mrs. Floriece Adams, and two minor children.

Complaint was filed in this court by Douglas MacLeod and Thomas L. Cashion, both of whom are attorneys. One of them resides in Arkansas and the other in Missouri. They seek to enjoin Vest Transportation Company and its insurance carriers from negotiating or in any way attempting to settle the claim arising out of the death of Clemmie J. Adams with anyone except them, alleging that Mrs. Adams contracted with them to represent her in a claim for damages for the benefit of herself and her minor children for the death of Clemmie J. Adams under the provisions of the Jones Act and general maritime law whereby plaintiffs were to receive a contingent fee for their said representation. They allege that they began working under this contract and notified an attorney for Vest Transportation Company that they were representing Mrs. Adams and her children. The allegations of the complaint upon which the prayer for injunction is based are as follows:

"That notwithstanding this notice, the defendant and/or its attorneys and insurance carrier have attempted to negotiate a settlement of this claim directly with Mrs. Floriece Adams and have induced her to breach her contract with the plaintiffs."

The complaint also alleges:

"That the said Mrs. Floriece Adams has written to the plaintiffs informing them that she no longer desires their services and that she will reimburse them for the expenses incurred by them in representing her after she has received the proceeds of a settlement with the defendant."

The complaint also contains allegations of value as to the claim and to the effect that plaintiffs will be damaged by reason of the threatened action of the defendant.

The defendant has filed a motion, under Rule 56 of the Federal Rules of Civil Procedure, for a summary judgment and this motion is before the court on affidavits and briefs of the parties.

The facts in this record which are material to a disposition of the aforementioned motion are not in dispute. Mrs. Adams is a resident of Louisiana. Before September 29, 1963, she did not know either of the plaintiffs or know anything about them. On that date plaintiff, Cashion, came to see her at Gay's Funeral Home at Oak Grove, Louisiana, while she was arranging for the funeral of her deceased husband, and there obtained from her a letter contract which was typed out on stationery of this funeral home. This document was addressed to the two plaintiffs and undertook to employ them to represent Mrs. Adams and her two minor children on a contingent fee basis for the handling of the aforementioned death claim against Vest "Towing" Company of Greenville, Mississippi. It was signed by Mrs. Adams and accepted for plaintiffs by Cashion. The funeral of the deceased seaman took place in Louisiana on October 1, 1963. On the day following the funeral, Cashion visited Mrs. Adams in her home near Delhi, Louisiana, and discussed matters pertaining to the deceased. On October 4, Mrs. Adams, on the advice of a Louisiana lawyer who had been on close terms with her deceased husband, telephoned Cashion and told him that she wanted to end his employment and Mr. MacLeod's immediately, but that she would, of course, protect them on any expense and for payment of any time they had spent or work they had done up to that point. She shortly received a letter from Cashion asking why she wanted to cancel the contract and she immediately wrote him a note confirming what she had told him on the telephone. That letter reads as follows:

"As I told you in our conversation on the phone October 4, 1963, that I do not want either you or Mr. MacLeod to represent me on this case. I was under shock at the time I talked to you September 29, 1963. If you will send me an itemized statement of the expense, I will reimburse them after settlement."

There is a complete absence of evidence to show that defendant, Vest Transportation Company, caused in any way the aforementioned actions of Mrs. Adams with respect to the said contract with plaintiffs. In fact, *all the evidence is to the contrary*.

Defendant contends that since all of the acts complained of in this case took place in Louisiana, then the law of that state must control. The minority rule which obtains in that state is that one who is not a party to a contract is not liable in damages to one of the parties to such contract for inducing the other party to breach it. See Stringer v. Consumers Credit Corp., 234 Miss. 240, 105 So.2d 756 (1958); B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co., 113 La. 388, 37 So. 2, 67 L.R.A. 65 (1904); Robert Heard Hale, Inc. v. Gaiennie, 102 So.2d 324 (La.Ct.App.1958); Alexander v. Texas Co., 149 F.Supp. 37 (W.D.La. 1957), and New Orleans Opera Guild, Inc. v. Local 174, Musicians M. P. U., 242 La. 134, 134 So.2d 901 (1961), all of which support the rule as above stated. If inducement by a third party to breach a contract is not actionable in damages, no injunction would lie here against defendant.

Plaintiffs contend that the law of Louisiana does not control since the contract was not to be performed in that state and cite section 766, Restatement of the Law of Torts, in support of their contention that they should be able to maintain this action. But that section, even if taken as authoritative, has to do with a right against a person who "induces or otherwise purposely causes a third person not to

• "a) perform a contract with another, or

"b) enter into or continue a business relation with another.

\* \* \*"

And, as has been said, there is a complete absence of evidence in this record that defendant in this case had anything at all to do with the actions of Mrs. Adams with respect to termination of her contract with plaintiffs.

But, it is not necessary, as will be shown, to say that the law of Louisiana does or does not apply here.

■ While conceding that Mrs. Adams had a right to rescind the contract, plaintiffs say that to do so she was required to tender to them payment for their services on a quantum meruit basis which she did not do and that, therefore, the rescission or cancellation was not effective. No authority is cited for this proposition, but authority is cited bearing on how the quantum meruit is to be determined which is a question with which this court in this case is not concerned since this is not a suit between plaintiffs and Mrs. Adams. The rule with respect to termination of a contract or agreement between an attorney and a client is that the client has a right to discharge the attorney and terminate the relation at any time, even without cause, no matter how arbitrary his action may seem. 7 C.J.S. Attorney and Client § 109.

On the uncontradicted facts in this record, this court must say that Mrs. Adams effectively terminated her contract with plaintiffs before this suit was filed.[1] There possibly could be a claim (not here involved) which might be maintained against Mrs. Adams by plaintiffs.

■ In sum, plaintiffs' position seems to be that since they have such an unresolved claim against Mrs. Adams, they are entitled to an injunction to keep defendant from settling a claim, which counsel on both sides in briefs agree is now being asserted in a suit pending in this court filed for Mrs. Adams by another attorney. This position is completely untenable. This is so when we look to the law of Illinois where the suit for Mrs. Adams and her children was to be filed by plaintiffs, according to the uncontradicted affidavit of one of them. In Cameron v. Barancik, 173 Ill.App. 23

---

1. No suit had been filed by plaintiffs at the time of termination of their contract.

(1912), the court held that "an action based on malicious inducement of a breach of contract by a client with an attorney, prohibiting the client from settling or compromising the claim, would not be maintainable." 84 A.L.R. 48. The facts are stronger here for the same result, since the contract of employment contained no express agreement on the part of Mrs. Adams not to settle without knowledge or consent of plaintiffs and here there is no allegation (and certainly no proof) of malice on the part of the defendant, and there is no proof here that defendant induced in any way the actions of Mrs. Adams with respect to plaintiffs' contract. See also The Golden Star, 82 F.2d 687 (9 Cir. 1936); Swanson v. Chicago, St. P. & K. C. Ry. Co., 35 F. 638 (C.C.D.Minn. 1888); In re Baxter & Co., 154 F. 22, 24 (2 Cir. 1907), and Hilditch v. American Bumper Corporation, 15 F.2d 451 (E.D.N.Y.1926).

This is also true if we look to the law of Mississippi, which plaintiffs say is the only other place the contract between Mrs. Adams and them could have been performed. Three cases are applicable. In Mosely v. Jamison, 71 Miss. 456, 14 So. 529 (1893), the court held that though plaintiff agrees to give his attorney, for his services, a part of the judgment he recovers, he may compromise and dismiss the suit without the attorney's consent. In Cochran v. Henry, 107 Miss. 233, 65 So. 213 (1914), it was held that a provision in a contract between an attorney and a client which prohibits a settlement of the client's claim without the attorney's consent is against public policy. In New Orleans & N. E. R. Co. v. Tally & Mayson, 109 Miss. 393, 69 So. 186 (1915), a client's compromise and settlement of a claim against a railroad was held a discharge of the railroad so that the attorney who had taken the claim on a percentage basis could not recover it from the railroad. It follows that if Mrs. Adams could have settled her claim without plaintiffs' consent during the life of the contract with them, she could settle it after termination of that contract. If plaintiffs could not prevent her settling before termination of the contract, they cannot enjoin defendant from settling with her now.

At this point it probably would suffice to say, as this court now does, that there is no genuine issue as to any material fact, that defendant's motion is well taken and that defendant is entitled to judgment as a matter of law. But, something more needs to be said.

This court will not lend its aid in any way to the gathering of the fruits of a contract of employment procured by an attorney as was the one here. It was obtained by shameless solicitation by one of the plaintiffs who was not theretofore known personally or at all by Mrs. Adams. The other plaintiff was not known personally or at all by Mrs. Adams. The solicitation took place at a funeral home at a time when Mrs. Adams was there to arrange the funeral for her husband who had been killed only two days before at a substantial distance from the marital home.

Plaintiffs seek the aid of this court as a court of equity. They pray for the issuance of an injunction—undoubtedly equitable relief. "He who comes into equity, must come with clean hands." Here the hands of the plaintiffs are not clean. They reek with the filth of a commercialized type of solicitation which degrades and debases their profession which this court will not in any way approve or condone.

Defendant's motion for summary judgment is sustained and order will be entered awarding judgment to defendant.