JOHN VANDERBILT

*v.*

HENRY MITCHELL, medical superintendent, et al.

[Decided May 17th, 1906.]

1. *Gen. Stat. p. 2006* makes it the duty of the physician in attendance at the birth of any child, or, in case there be no physician, then of the parents, to transmit to the registrar of vital statistics a birth certificate, setting forth the names of the parents, &c., and it is made the duty of the medical superintendent to index such certificates, and they are made evidence of the facts therein stated. A certificate was signed by a physician, and subsequently the one whose name was given as father of the infant filed a bill seeking to cancel the certificate, and charging that the mother of the child had caused the certificate to be filed.—*Held*, that the demurrer did not admit such allegation as to the mother.

2. A certificate was signed by a physician, and in a bill against the medical superintendent, complainant's wife and the infant born of the wife during wedlock, complainant alleged that the infant was not complainant's child, as shown by the certificate, and he prayed an injunction against the medical superintendent restraining him from issuing certified copies of the certificate, and for a decree declaring that complainant was not the infant's father, and that the record of the birth and certificate, if not entirely set aside, might be amended by striking out complainant's name as the father, and that the mother and child be enjoined from offering in evidence the certificate of birth, or any copy thereof, or representing such infant as the child of complainant.—*Held*, that the bill was not within the jurisdiction of equity.

On demurrer to bill.

This is a bill filed by John Vanderbilt against Henry Mitchell, medical superintendent; Myra L. J. Vanderbilt and William Godfrey Vanderbilt.

The bill charges that John Vanderbilt is the husband of Myra L. J. Vanderbilt, and that they are each residents of the State of New Jersey, in which state they were married on the 7th of February, 1901; that from September, 1901, to July, 1903, the wife of the complainant and one Santy lived together in adultery at Sound Beach, in the State of Connecticut, and that during that time complainant did not have matrimonial access to his wife; that as the result of the adulterous intercourse of the complainant's wife with said Santy a male child was born to complainant's wife in the State of New Jersey on or about the 20th day of October, 1903, and by her was named William Godfrey Vanderbilt; that complainant is not the father of said child; that complainant's wife did cause to be filed with the bureau of vital statistics of the State of New Jersey at Trenton a certificate of birth of said child, the material parts of which certificate are as follows:

1. Full name of child (if any)—Wm. Godfrey Vanderbilt. Color—White. Sex—Male.

2. Date of birth—October 20th, 1903.

3. Place of birth—New Providence, Union county, N. J.

4. Name of father—John Vanderbilt. (If out of wedlock, write O. W.)

8. Number of children in all by this marriage—One. How many of them living—One.

9. Name and post-office address of medical attendant, in his own handwriting, with date—W. H. Lawrence, Summit, N. J.

[Which signature was written by the medical attendant himself.]

That Henry Mitchell is the medical superintendent of the said bureau of vital statistics; that the complainant's wife claims that the child is the legitimate child of complainant, and is entitled to all the rights, personal and of property, which would belong to a legitimate child of complainant and his wife, and that the said child, through his mother, asserts said rights.

The bill sets out a testamentary trust created by the mother of the complainant, Susan Ann Hoogland, by the terms of which certain property in the State of New York is vested in trustees, who are to collect and receive the income for and during the lives of two of the grandchildren of the testatrix named in the will, and divide the same into five equal parts, and pay over one of each of said parts to the four children of the testatrix (one of whom is the complainant) and to the children of the deceased daughter, the grandchildren above named. It was further provided that upon the death of the said grandchildren the *corpus* of the estate should go in equal parts to each of the said children and the issue of the deceased daughter, and that in case any of the said children should not be living at the termination of the trust, the share to which the deceased one would be entitled should go to his or her lawful issue, and in case any of said children should die before the termination of the trust, leaving no lawful issue, the share of such one should go to his or her brothers and sisters living at the termination of the trust, and to the issue of any deceased child or children *per stirpes*.

It is charged that Oliver G. D. Vanderbilt, who is one of the trustees above mentioned, is a resident of New Jersey, and that the large income derived from the trust estate aforesaid is by him deposited and kept in the State of New Jersey.

The seventh paragraph of the bill is as follows:

"Your orator further shows that he is sick and infirm, and believes and is advised by his physicians that he is afflicted with a fatal illness, and that he is greatly wronged, and suffers much pain and anguish of spirit, by reason of the false and fraudulent claim made by the said infant, through his mother, that your orator is the father of said child, although born of his mother while living apart from your orator, as aforesaid, and that the certificate of birth filed as aforesaid is a fraud upon your orator, by virtue whereof your orator's said wife seeks to falsely and fraudulently create evidence in favor of her offspring whereby said child can claim to be the lawful issue of your orator, and as such is

entitled to benefit in the land and income therefrom under the will of Susan Ann Hoogland, as aforesaid, and also to secure the right to the name and repute and status of a child of your orator. And your orator shows and charges that he is wronged and aggrieved by the continued existence of said certificate of birth as a public record of this state, evidencing that your orator is the father of said child."

The prayer is for an injunction against the medical superintendent restraining him from issuing certified copies of the certificate of birth, and for a decree declaring that complainant is not the father of the child; that the record of said birth and the certificate thereof, if not entirely expunged and removed, may be altered and amended by striking out the name of your orator as the father of said child; that Myra L. J. Vanderbilt and the said child may be enjoined from offering in evidence, in any court of law or equity in this or any other jurisdiction, the certificate of birth aforesaid, or the record thereof, or a certified copy of the same, and may also be enjoined from representing said child as the child of said complainant, and from using for said child the name of Vanderbilt, and from claiming for said child the status, name, property or privileges of a begotten child of complainant.

A demurrer to this bill is interposed by Myra L. J. Vanderbilt individually and as guardian *ad litem* of the child.

*Messrs. McDermott & Enright,* for the complainant.

*Mr. Harry V. Osborne* and *Mr. Leroy Gibby,* for the demurrants.

GARRISON, V. C. (after stating facts).

The demurrer, of course, admits the truth of all of the allegations of the bill that are well pleaded. The bill charges that Myra L. J. Vanderbilt, the wife of the complainant, caused the certificate of birth of the child to be filed. In view of the statutes of this state upon this subject, I do not think this allegation is admitted by the demurrer. The statute in question is the act of February 15th, 1888. *P. L. 1888 p. 52; Gen. Stat. p. 2006.* Paragraph 12 of that act provides

"that it shall be the duty of the physician or midwife present at the birth of any child born in this state, and in case there be no physician or midwife present, then of the parents, or either of them, to transmit, within thirty days after such birth, to the officer herein designated, a certificate of such birth, which certificate shall be set forth particularly, as far as they can be obtained, the day of the month and year of the birth, the township, city or municipality and the county in which the birth occurred, the name of each of the parents, the maiden name of the mother, the birthplace, residence and occupation of each of the parties, the sex and color of the child, the name of the child, if it be named, and the name of the attending physician or midwife, if any there be."

A penalty of $20 is provided for the failure of any physician or midwife to transmit such certificate as aforesaid.

Paragraph 14 provides that the certificate of birth shall be transmitted to the registrar of vital statistics, if there be such officer, and if not, then to the clerk of the city, borough, town or other municipal government in which such birth occurred; and in townships, to the assessor, and if no assessor in office, then to the township clerk.

Paragraph 22 makes it the duty of the officer first receiving the certificate to transmit the same to the "state bureau of vital statistics at Trenton."

Paragraph 21 provides

"that any * * * physician, midwife, or other person, who shall knowingly make any false certificate of * * * birth * * * shall be deemed guilty of a misdemeanor,"

and be liable to fine or imprisonment, or both.

Paragraph 23 makes it the duty of the medical superintendent of the bureau of vital statistics to receive the certificates and keep them, and properly index and record them, and further enacts that

"such original certificates, or any copy thereof, certified to be a true copy, under the hand of said medical superintendent, shall be evidence in any court of this state to prove the facts therein contained."

An inspection of the copy of the certificate in this case shows that it was made by a physician named W. H. Lawrence. It was his duty to comply with the provisions of the law in this respect, and to file this certificate, and therefore I do not think that the

charge in the bill is well pleaded that the wife of the complainant caused this certificate to be filed. The law required it to be filed, and provided that the physician should file it, or cause it to be filed. He did so. The certificate seems to be in exact conformity with the provisions of the act.

Under the well-pleaded facts in the bill it appears that there are certain statements in the certificate which are false, namely, it is false that the name of the father of the child is John Vanderbilt, and that the number of children in all by the marriage is one, and that one is living. There are no well-pleaded allegations that the physician knowingly made any false certificate, and the physician is not made a party to this bill.

Since it is conceded that a male child was born to the woman named, at the time and place named, and that the attending physician made the certificate required by law, which has been lodged with the officer designated by law to receive it, and it has thus become a record of the state, I think it clear that the certificate itself cannot be canceled, suppressed or wiped out in its entirety, and this would not be necessary to effectuate the purpose of the complainant. This certificate would be harmless, so far as the complainant is concerned, if it did not recite that the complainant was the father of the child. It is this statement which he desires to have excised from this certificate or record, which latter, by statute, has evidentiary force to prove the facts therein stated.

If the complainant cannot call for the cancellation, suppression or annulment of the entire record, is there any jurisdiction in this court in this proceeding to order the excision of the false or untrue statements concerning his paternity of this child? I am aware of no head of equity jurisprudence under which any such jurisdiction could be exercised. If the complainant's theory is that the record is incorrect, and that he has such an interest therein that, upon his application, it should be corrected, this would lead to proceedings by *mandamus,* or perhaps by *certiorari.* If it be held that the result of the legislation on this subject is to constitute an inferior tribunal with *quasi*-judicial power to ascertain and record certain facts, among them paternity, &c., then it is possible that the record of the finding of this

tribunal would be subject to review by the supreme court on *certiorari.* Whether there is any possibility of the complainant succeeding in such proceedings it is not necessary or proper for me to determine.

If the physician, in the performance of a statutory duty in making this certificate, has made incorrect statements therein, and there is any power in any court to compel him to correct such statements, that power is by *mandamus* or *certiorari* issued out of a court of law. His remedy, in my view, in this respect is either at law, or else it does not exist, for if he may not get this record corrected by some proceedings at law, there is no jurisdiction in equity with respect thereto which would empower a court of chancery to order the correction made.

In the suit at bar the physician is not a party. I do not see any aspect in which the medical superintendent, the custodian of this certificate or record, could be compelled by law in any other way than the physician might be to correct this record, and there is, of course, an obvious difficulty in proceeding against the medical superintendent by *mandamus* to compel him to correct it. His only statutory duty is to receive and hold the certificate, and to issue certified copies thereof when requested. He has no duty with respect to making the certificate, and therefore it is clear that he could not be compelled by law to execute a duty, namely, to correct misstatements, when he was not required by law to make any statements, correct or incorrect. The only duty that he could be enjoined to perform would be that which the law casts upon him, and that does not include any function with respect to making the certificate.

Passing, for these reasons, from the consideration of relief to the complainant by way of correcting the record or certificate, we come to the other suggested remedies.

The complainant desires to enjoin the medical superintendent, broadly speaking, from allowing this certificate to be taken from his custody to be used as evidence, and from certifying copies thereof for similar use. I do not know under what head of equity jurisdiction any such relief could be granted. This certificate is a record of the State of New Jersey. The statute requires copies thereof to be made and certified, and gives such

copies certain evidentiary value. So long as the record is there, I do not think it proper for a court of equity to restrain the state's officer from doing his statutory duty. If the court has not the power, under the circumstances of this case, to cancel, annul or correct this record, I do not see how it can have the power to enjoin the custodian of it from doing his statutory duty with respect to it. That a court of equity has not the power, under the circumstances, to order the cancellation, annulment or correction of this record I have already determined.

The complainant further prays an injunction against the mother of the child and against the child, restraining them, broadly speaking, from using this certificate, or any copies thereof, as evidence, and from claiming that the child is the complainant's child. Here, again, I fail to find any basis for the interposition of equity. The nearest analogy is jactitation of matrimony, the effort in this case being to restrain a child and its mother from boasting or claiming that the child is legitimate. The jurisdiction in jactitation suits was in the ecclesiastical courts, and since we have no ecclesiastical courts, no tribunal can take jurisdiction without authority from a statute. *Bish. Mar. & D.* §§ *121, 801 et seq.*, particularly § *128.*

The jactitation suit has never been known in any of our states. *Bish. Mar. & D.* § *796.*

The remedy of establishing or destroying personal status does not belong to the original jurisdiction of chancery, and, so far as it exists, is wholly of statutory origin. *1 Pom. Eq. Jur. (3d ed.) 123* § *112.* And in section 99 (*1 Pom. Eq. Jur. (3d ed.) 105*) he says:

"It is only when some property rights or questions concerning property arise between husband and wife, parent and child, guardian and ward, that equity can possibly have jurisdiction, and even in such cases jurisdiction does not extend to the merely personal relations."

The complainant in this suit shows no property rights of his which are in any way affected and require protection. Under the trust created by his mother he receives the income during his life, and the legitimacy or illegitimacy of this child cannot affect his rights with respect thereto. Whether this child is

legitimate or illegitimate is a subject of interest and concern to those who would benefit if this complainant died without issue. But, as has just been said, no property right of the complainant is affected by this question. With respect to the property owned by the complainant, he may, of course, dispose of that by will, if he so desires, and the legitimacy or illegitimacy of the child does not affect this right in the least, and if he does not dispose of it by will, this child, if not his, has no legal claim upon his estate. If, then, the complainant has no property rights that are affected by the question of the legitimacy or illegitimacy of this child, the only injury or grievance of the complainant is personal, and I do not know of any power in a court of equity to give him the relief he asks for in this respect.

Although there have been many cases in which adulterine bastardy was the issue, I have not found one, and counsel have not cited any, in which the father was the actor. The issue was always raised by one whose property rights were involved.

As Pomeroy has well said, the question nowadays to be determined by a court of equity is

"whether the circumstances and relations presented by the particular case are fairly embraced within any of the settled principles and heads of jurisdiction which are generally acknowledged as constituting the department of equity." *1 Pom. Eq. Jur. (3d ed.) 66 § 62.*

As I have before said, I know of no recognized head of equity jurisdiction under which this bill could be entertained. The demurrer must therefore be sustained.

Since the courts have held that it is against public policy to permit a husband or wife to testify as to non-access, with respect to a. child conceived during wedlock, I had some doubt whether a court of equity should entertain this suit. The entire gravamen of this suit is to have a child declared a bastard. The bill is by the husband of the mother of the child, and the latter was conceived during wedlock. It has been said that the rule above alluded to "is founded on the very highest grounds of public policy, decency and morality." The authorities will be found in *11 Eng. Rul. Cas. 518* and notes; *7 Mew's Eng. Cas. L. Dig. col. 674, lit. "Evidence of Parents as to Access;" 3 Wigm. Ev. 2061 § 2063 et seq.*

If the authorities made it clear that the courts had determined that public policy forbade the ostensible parents from giving testimony which would bastardize the issue, and that such public policy was in tender consideration of the issue, I incline to the opinion that a bill filed by the ostensible parent to accomplish the bastardization of the issue would not be entertained. It seems to me that if the rule of public policy were grounded as above suggested, such a bill would be obnoxious to the rule. But after reading the authorities I do not find that consideration for the infant was always, or in fact often, the reason given for the application of the rule. Many and different reasons are stated for its existence and application, and I do not feel justified, therefore, in refusing to entertain jurisdiction of this bill upon this ground.

I will advise an order sustaining the demurrer, for the reasons heretofore stated.