97 N.J. Super. 327 (1967)
235 A.2d 62
JOSEPH CANESSA AND ANN CANESSA, HIS WIFE, AS INDIVIDUALS AND AS GUARDIANS AD LITEM OF ROSE CANESSA, JOSEPH CANESSA JR., ANDREW CANESSA, PATRICK CANESSA, JAMES CANESSA, KEVIN CANESSA, MICHAEL CANESSA AND JOHN CANESSA, PLAINTIFFS,
v.
J.I. KISLAK, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 19, 1967.
*329 Mr. David A. Waters for plaintiffs (Messrs. Waters & McPherson, attorneys).
Mr. James J. Shrager for defendant (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
LYNCH, J.S.C.
Defendant moves:
(a) for dismissal of the complaint and for summary judgment in its favor on the grounds that
(1) plaintiffs' action for invasion of what is said to be their "right of privacy" is barred by the two-year statute of limitations governing actions for injury to the person (N.J.S.A. 2A:14-2);
(2) since the publication of plaintiffs' likeness would not cause mental suffering, shame or humiliation to a person of ordinary sensibilities, the complaint does not state a claim upon which relief can be granted;
(3) as a matter of law, infant plaintiffs were not injured in their person or property by the acts complained of, and
*330 (4) plaintiffs consented to the use of their photograph as alleged in the complaint; and
(b) for an order striking plaintiffs' first, second and third pleas in avoidance of the defense of statute of limitations on the ground that they are insufficient in law.
The complaint herein and defendant's motions evoke attention to the law of "right of privacy" in an area which has not been explored in New Jersey. The right has, however, been recognized in the cases of Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72 (Ch. Div. 1967) (use of names of plaintiff professional golfers in connection with paperboard game); Frey v. Dixon, 141 N.J. Eq. 481 (Ch. 1948) (subpoena of financial records of plaintiff police officers in investigation of alleged violation of gambling laws); McGovern v. Van Riper, 137 N.J. Eq. 24 (Ch. 1945), affirmed 137 N.J. Eq. 548 (E. & A. 1946) (involving dissemination of plaintiff's fingerprints); Brex v. Smith, 104 N.J. Eq. 386 (Ch. 1929) (involving prosecutor's attempt to examine bank accounts of all members of a police department during an investigation); Edison v. Edison Polyform & Mfg. Co., 73 N.J. Eq. 136 (Ch. 1907) (involving use of plaintiff's photograph on defendant's medicinal product); Vanderbilt (John) v. Mitchell, 72 N.J. Eq. 910 (E. & A. 1907) (suit by plaintiff seeking an injunction to restrain a mother and child from claiming that the child was plaintiff's legitimate son and from using his name); and Vanderbilt (Oliver) v. Mitchell, 72 N.J. Eq. 927 (E. & A. 1907) (suit by brother of John Vanderbilt holding that complainant had property interest under a will in the event of brother John's death. Same relief as in John's case).
The complaint is in four counts. Its essence is stated in the first, wherein Joseph Canessa alleges that on or about September 18, 1961, "and at diverse times thereafter", defendant J.I. Kislak, Inc. published and circulated a photograph and accompanying article depicting all of the plaintiffs *331 and that said article "was an unauthorized appropriation by defendant of the pictures, names and elements of the personalities and private lives of all of the plaintiffs for commercial use." The same cause of action was alleged in the second count by plaintiff Ann Canessa, wife of Joseph, and in the third count on behalf of the Canessa children. The fourth count seeks punitive damages.
The suit arises out of the following facts, which are undisputed. For four or five years prior to 1961 Joseph Canessa and his family had been trying to find an apartment or house to rent, but because of the fact that they had eight children they were unable to secure the same. Finally, sometime in July 1961 Mr. Canessa ran an advertisement in the "Lost and Found" section of the Jersey Journal which said, in essence, "Lost the right to rent because of too many children." One Rothberg, a salesman employed by defendant, answered the advertisement, convinced Canessa that he could not find an apartment to rent for the family, but that he could assist Joseph in purchasing a home under the G.I. bill. Finally, through Rothberg's efforts, a house was found and the closing took place on August 25, 1961.
One Goldblatt, employed by defendant in its advertising department, contacted the Jersey Journal and asked if the paper would be interested in running a story on the Canessa family. The Journal contacted Joseph Canessa and he consented to an article being written about his family's problem and its solution, and he and the other members of his family posed for a picture which was published in the Jersey Journal on September 18, 1961. Defendant then had reprints of the article made and had imprinted on the same sheet defendant's commercial trademark contained in the words:
 "J.I. Kislak, Inc.
 The live wire Founded 1906
 Kislak Bldg., Journal Square, Jersey City
 OL 3-7100"
*332 These reprints were distributed by defendant, without doubt for advertising purposes in advancement of its commercial interests. In late September or early October 1961 one of defendant's agents showed the reprints to Mr. Canessa, who objected to their existence and use by defendant. Defendant files an affidavit by one Joseph Goldblatt, who was in charge of distribution of the reprints, to the effect that they were distributed to Kislak's real estate salesmen employed in the Hudson County area and were to be used by the salesmen as part of their sales kits "to show prospective purchasers what could be accomplished by Kislak salesmen for veterans." The reprints have not been used since 1961. This suit was instituted on July 20, 1966. Therefore, if the two-year statute of limitations governs, the action is barred, at least as to the adult plaintiffs Joseph and Rose Canessa. As to the infant plaintiffs, the statute is tolled. N.J.S. 2A:14-21.

THE STATUTE OF LIMITATIONS (Ground (a) (1))
Defendant's argument that the two-year statute of limitations governs is based upon the contention that a suit for invasion of "right of privacy" is one for "injury to the feelings"; that "one's feelings are as much a part of one's person as his or her body," and therefore it is an action for "injury to the person" within the meaning of N.J.S. 2A: 14-2. Defendant's brief asserts that the damages claimed by plaintiffs are for injuries to their "good name, fame and credit, exposure to public ridicule, and the suffering of mental distress." But the complaint also alleges that the use by defendant of the pictures and names of the plaintiffs was an "unauthorized appropriation by defendant of the pictures, names and elements of the personalities and private lives of all the plaintiffs for commercial use."
Plaintiffs contend that this is not an action for "injuries to the person" but, rather, one for a tortious injury to "property" rights barred only after six years under N.J.S. 2A:14-1.
*333 The basic question, therefore, is: What is the nature of the "right of privacy" as here sued upon? This concept, as now understood, was first projected in what has been called the "monumental" article by Warren and Brandeis in 4 Harv. L. Rev. 193 (1890). Since that time "no other tort has received such an outpouring of comment in advocacy of its bare existence." Prosser, Law of Torts (3d ed. 1964), § 112, p. 830. The flood of decisions, legal treatises and reviews which followed has resulted, however, in what has been called a "haystack in a hurricane," so far as the nature of the concept is concerned. Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481, 58 A.L.R.2d 626 (3 Cir. 1956), where the court said:
"With these preliminaries out of the way, we now come to the question, what kind of injury or injuries has Ettore suffered? Since the famous Warren and Brandeis article, `The Right to Privacy,' 4 Harv. L. Rev. 193 (1890), a great deal has been published concerning the kind of action, if any, an individual in the position of Ettore in the instant case or in that of Leverton in our Leverton decision may maintain against one who has infringed his personal or property rights. The state of the law is still that of a haystack in a hurricane but certain words and phrases stick out. We read of the right of privacy, of invasion of property rights, of breach of contract, of equitable servitude, of unfair competition; and there are even suggestions of unjust enrichment." (at p. 485)
Leading authorities have pointed out the need for a method of classification of the various aspects which come under the umbrella of the "right of privacy"  e.g., Green, "The Right of Privacy," 27 Ill. L. Rev. 237, 332 (1932). Green would classify the types of harms as (1) physical harms, (2) harms of appropriation and (3) harms of defamation. Prosser points out that the early cases consequent upon the Warren and Brandeis article were preoccupied with the question whether the right of privacy existed at all, and gave little or no consideration to what it would amount to if it did. After a review of several hundred cases he concludes (with the reservation that "what has *334 emerged is no very simple matter") that some conclusions are possible, but that
"It is not one tort, but a complex of four. The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'" (Op. Cit., at p. 832)
The four classifications[1] which he propounds are (1) intrusion (e.g., intrusion upon plaintiff's physical solitude or seclusion, as by invading his home, illegal search, eavesdropping, prying into personal affairs, etc.), (2) public disclosure of private facts (e.g., making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable man), and (4) appropriation, which he defines as an "appropriation, for the defendant's benefit, of the plaintiff's name or likeness."
For purposes here, we shall accept Prosser's four classifications.
It is only with respect to the last classification, namely, appropriation for defendant's benefit, more particularly for his commercial benefit with which we are here concerned.[2] We thus ask ourselves whether this type of invasion of privacy is an "injury to the person" governed by the two-year statute of limitations. As to this classification (4), i.e., "appropriation." Prosser says:
"Although the element of protection of the plaintiff's personal feelings is obviously not to be ignored in such a case, the effect of the appropriation decisions is to recognize or create an exclusive right in the individual plaintiff to a species of trade name, his own, and *335 a kind of trade mark in his likeness. It seems quite pointless to dispute over whether such a right is to be classified as `property'; it is at least clearly proprietary in its nature. Once protected by the law, it is a right of value upon which the plaintiff can capitalize by selling licenses." (Op. Cit., at p. 842)
As said above, the answer is not simple  this for the reason that so much confusion arose in the cases after the projection of Warren and Brandeis' concept in 1890.
In a most scholarly article entitled, "Right of Property in Name, Likeness, Personality and History," 55 Nev. U.L. Rev. 553 (1960), Gordon analyzes the flood of judicial and other attention to right of privacy and recognizes the confusion of concept applied since 1890. He says:
"An analysis of the decided cases through the years leads to the conclusion that much of the confusion and conflict in the decisions arose because litigants chose to sue in almost every case for invasion of privacy (premised on injury to feelings), rather than for the appropriation for commercial exploitation of rights in name, likeness, etc., in situations where injury to feelings had only secondary application. So long as privacy suits were confined (as in most of the early cases) to the advertising exploitation of private individuals plucked from obscurity against their will, to invasions by wire-tapping, or to similar indignities where injury to feelings was the principal harm, there was little difficulty. However, when the suits began to involve all types of commercial exploitations, particularly of public figures, the decisions became confused." (at p. 554)
Thus, there must be an appreciation of the nature of the right which was protected prior to the Warren and Brandeis article; an analysis of the decisions which followed and the nature of the rights recognized in those decisions; why confusion as of a "haystack in a hurricane" has developed, and, more specifically, there must be recognition of what is precisely involved when we are confronted with an appropriation of plaintiff's likeness for advertising purposes to defendant's commercial benefit. Having established the nature of the right involved, we must then determine whether the action is one for injury to the person under N.J.S. 2A:14-2, or whether it is an action for tortious injury to the rights *336 of another under N.J.S. 2A:14-1 and not stated in N.J.S. 2A:14-2.
Gordon points out that while the Warren and Brandeis concept of right of privacy was premised upon previously recognized rights of property, contract or trust relationship which had always been recognized by the courts, the authors nevertheless felt there was a need for a recognition of a distinct right of privacy which would be independent of any such property, contract or similar right, especially since, absent such rights, the basic injury was a violation of the plaintiff's right "to be let alone" and the essential injury was to one's feelings with consequent mental anguish. As Warren and Brandeis said:
"* * * our law recognizes no principle upon which compensation can be granted for mere injury to the feelings." 4 Harv. L. Rev. at p. 197.
It was to fill this gap that Warren and Brandeis unleashed their concept of "right of privacy." They argued that, while prior cases had based the right on rights of property, contract, etc., the rights applied and protected were rights of property, etc., only in the "broadest" sense. They recognized that with respect to the reproduction of literary and artistic compositions:
"They certainly possess many of the attributes of ordinary property: they are transferable; they have a value; and publication or reproduction is a use by which that value is realized. But where the value of the production is found not in the right to take the profits arising from publication, but in the peace of mind or the relief afforded by the ability to prevent any publication at all, it is difficult to regard the right as one of property, in the common acceptation of that term." (Op. cit., at p. 200)
They acknowledged that in the rights theretofore protected there did inhere that quality of being owned or possessed (as that is the distinguishing attribute of property), and there may have been some propriety in speaking of them as *337 "rights of property." 4 Harv. L. Rev., at p. 205. However, it was their conclusion that in reality it was not the principle of property, contract, etc., but that of "inviolate personality" which was involved. What they were looking for was a means of protection for that distinct injury which resulted in invasion of the personality in itself. Seemingly not concerned with the term used, they said:
"That obligation is simply to observe the legal right of the sender [of the letter], whatever it may be, and whether it be called his right of property in the contents of the letter, or his right to privacy." (Op. cit., at p. 212; emphasis added)
Thus, the concept projected by Warren and Brandeis was not one which rejected the "property" aspects of the right involved, but rather was a plea for recognition of a distinct right "to be let alone," independent of the common rights of property, contract or trust, etc. It was an effort on the authors' part to provide a remedy for the mental anguish caused to an individual where there was no injury to property or contract rights and for which there had theretofore been no remedy. It did not generate any new concept for invasion of one's "privacy" where property rights were in fact invaded.
Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478 (Ct. App. 1902), became a spark for exposition of the nature of right of privacy, not because of the majority holding in the 4-3 decision, but because of the dissenting opinion of Judge Gray, which became the fountainhead from which flowed the basic meaning of the right as expounded in the majority of later cases. In that case defendant had used plaintiff's picture without her consent on a calendar advertising its flour mill. Plaintiff sued for injury to her feelings. The majority rejected the new concept upon the ground that there was no precedent for it in common law, and that none of the cases cited by Warren and Brandeis were based on the ground that the plaintiff could get relief solely because his or her "feelings" were injured. Rather, said the majority, those decisions rested on *338 grounds of breach of trust or property. The decision was thereupon roundly criticized by all leading authorities. Our own Court of Chancery in Edison, supra, 73 N.J. Eq. 136, expressly rejected Roberson with the comment that the case "cannot be sustained on principle," and our former Court of Errors and Appeals in Vanderbilt (John), supra, 72 N.J. Eq. 910, referred to it as "a case seldom cited, but to be disapproved." Its popularity has not gained in the subsequent years. It was, as said by Prosser, met with "a storm of public disapproval." Of particular relevance to the problem before us is the comment by Gordon, op. cit., that
"If, however, the plaintiff in the Roberson case had sued on the basis of appropriation (commercial exploitation of her property right in her likeness), rather than expressly for the injury to her feelings, the entire course of the law in New York might, under the verbal influence, have taken a different turn." (at p. 558)
The dissenting opinion by Judge Gray, on the other hand, has received almost universal support. His analysis of the nature of the basic right involved demonstrates that while he would recognize a "right of privacy" as an independent concept  an injury to feelings, he would not require that it be based on a right of "property," if by that term were meant a right of property in a "tangible" thing. He found a different "property" to which the right of privacy attaches:
"Property is not, necessarily, the thing itself which is owned; it is the right of the owner in relation to it. The right to be protected in one's possession of a thing or in one's privileges, belonging to him as an individual, or secured to him as a member of the commonwealth, is property, and as such entitled to the protection of the law. The protective power of equity is not exercised upon the tangible thing, but upon the right to enjoy it; and so it is called forth for the protection of the right to it that which is one's exclusive possession as a property right. It seems to me that the principle which is applicable is analogous to that upon which courts of equity have interfered to protect the right of privacy in cases of private writings, or of other unpublished products of the mind. The writer or the lecturer has been protected in his right to a literary property in a letter or a lecture, against its unauthorized publication, because it is property, to which the right of privacy attaches. Woolsey v. Judd, *339 4 Duer, [N.Y., 379,] 399; Gee v. Pritchard, 2 Swanst. 402; Abernethy v. Hutchinson, 3 Law J. Ch. 209; Folsom v. Marsh, 2 Story 100, Fed. Cas., No. 4,901. I think that this plaintiff has the same property in the right to be protected against the use of her face for defendant's commercial purposes as she would have if they were publishing her literary compositions. The right would be conceded if she had sat for her photograph; but if her face or her portraiture has a value, the value is hers exclusively, until the use be granted away to the public. Any other principle of decision, in my opinion, is as repugnant to equity as it is shocking to reason. Judge Colt, of the United States court, in Corliss v. E.W. Walker Co. (C.C.) 64 Fed. 280-285, 31 L.R.A. 283,  a case involving the same question of an invasion of the right of privacy, with respect to the publication of a printed likeness of Mr. Corliss,  expressed the opinion that: `Independently of the question of contract, I believe the law to be that a private individual has a right to be protected in the representation of his portrait in any form; that this is a property, as well as a personal, right; that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk.' The case itself is not in point in its facts, because the complainant was the widow of Mr. Corliss, and thus it came within the limitations of Schuyler v. Curtis, [147 N.Y. 434, 42 N.E. 22, 31 L.R.A. 286.]
The right to grant the injunction does not depend upon the existence of property which one has in some contractual form. It depends upon the existence of property in any right which belongs to a person. * * *" (64 N.E., at pp. 450-451; emphasis added)
Thus, in the concept of "right of privacy" there is implicit the right of property, at least in the instance of an appropriation by a defendant of another's likeness. Even those subsequent cases which recognized Warren and Brandeis' new concept were unanimous in recognizing the basic common law property rights of one in his name and likeness, and in holding that they could not be appropriated by another in a purely commercial venture for the profit and gain of the appropriator. Gordon, op. cit., at p. 558. However, since most of these cases alleged humiliation and mental anguish of the plaintiff as the principal injury, rather than damages involved in the appropriation of his property rights, the courts applied the theory of the independent right of *340 privacy. Under this concept it was not necessary to first establish any property rights.
The narrow view of the majority in Roberson was soon demolished in what became the leading case, Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101 (Sup. Ct. 1905). In a well-reasoned opinion, the court approved the language of Judge Gray's dissent in Roberson as to the property rights of plaintiff in her likeness. In Munden v. Harris, 153 Mo. App. 652, 134 S.W. 1076 (Sup. Ct. 1911), the court put the question at issue as follows:
"* * * if it can be established that a person has a property right in his picture, those who deny the existence of a legal right of privacy would freely concede a remedy to restrain its invasion, for all agree that equity will forbid an interference with one's right of property." (134 S.W., at p. 1078)
The court gave its answer:
"Property is not necessarily a taxable thing any more than it is always a tangible thing. It may consist of things incorporeal, and things incorporeal may consist of rights common in every man. One is not compelled to show that he used, or intended to use, any right which he has, in order to determine whether it is a valuable right of which he cannot be deprived, and in which the law will protect him. The privilege and capacity to exercise a right, though unexercised, is a thing of value  is property  of which one cannot be despoiled. If a man has a right to his own image as made to appear by his picture, it cannot be appropriated by another against his consent. It must strike the most obtuse that a claim of exclusive right to one's picture is a just claim. * * * One may have peculiarity of appearance, and if it is to be made a matter of merchandise, why should it not be for his benefit? It is a right which he may wish to exercise for his own profit, and why may he not restrain another who is using it for gain? If there is value in it, sufficient to excite the cupidity of another, why is it not the property of him who gives it the value and from whom the value springs?

* * * * * * * *
We therefore conclude that one has an exclusive right to his picture, on the score of its being a property right of material profit. We also consider it to be a property right of value, in that it is one of the modes of securing to a person the enjoyment of life and the *341 exercise of liberty, and that novelty of the claim is no objection to relief. If this right is, in either respect, invaded, he may have his remedy, either by restraint in equity or damages in an action at law. If there are special damages, they may be stated and recovered; but such character of damage is not necessary to the action, since general damages may be recovered without a showing of specific loss; and if the element of malice appears, as that term is known to the law, exemplary damages may be recovered." (134 S.W., at pp. 1078-1079; emphasis added)
In rendering the foregoing opinion the court cited Pavesich v. New England Life Ins. Co., supra, and the New Jersey cases of Vanderbilt (John) v. Mitchell, 71 N.J. Eq. 632, 63 A. 1107,[3] and Edison v. Edison Polyform & Mfg. Co., supra, 73 N.J. Eq. 136.
In Edison, a case cited with approval many times in this area, Thomas A. Edison sought an injunction to restrain defendant from using his name and picture in connection with advertisements of one of its products. Vice-Chancellor Stevens referred to many of the prior cases, including Roberson and Pavesich, expressly repudiating Roberson, saying:
"This case cannot be sustained on principle, and has been disapproved by the supreme court of Georgia in Pavesich v. New England Life Insurance Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101, 106 Am. St. Rep. 104, and by our own court of errors and appeals in Vanderbilt v. Mitchell, not yet officially reported), 67 A. 97, 103. If a man's name be his own property, as no less an authority than the United States Supreme Court says, (Brown Chemical Co. v. Meyer, 139 U.S. 540, 542, 11 S.Ct. 625, 35 L.Ed. 247) it is difficult to understand why the peculiar cast of one's features is not also one's property, and why its pecuniary value, if it has one, does not belong to its owner, rather than to the person seeking to make an unauthorized use of it." (at p. 141; emphasis added)
In Vanderbilt (John) v. Mitchell, supra, 72 N.J. Eq. 910 (E. & A. 1907), plaintiff sought an injunction restraining a mother and a child from claiming that the child was *342 plaintiff's legitimate son and from using his name. He also sought an order expunging the birth certificate to that effect from the official records. Defendants claimed that no property right of plaintiff was involved. Our then highest court, also rejecting the majority opinion in Roberson, held that what Chancery was there doing was exercising the protection of "property rights" upon the ground that the use of plaintiff's name as father of the child "is calculated to injure his property." Judge Dill, speaking for the court, held that equitable jurisdiction was exercised upon the ground of "some property right, however slender and shadowy," and pointed out that a broad view as to what in fact constitutes "property rights," as adopted in prior decisions, was sufficient to sustain jurisdiction.
Again, Gordon, op. cit., at p. 558, says:
"The subsequent cases in other jurisdictions which established the right of privacy as a new right in the common law were unanimous both in recognizing the more basic common law property rights of one in his name and his likeness, and in holding that they would not be appropriated by another in a purely commercial venture for the profit and gain of the appropriator. However, since most of these cases dealt with the use of the plaintiff's name or picture in an advertisement of the defendant's product, and since the principal element of injury in these cases was the humiliation and mental anguish of the plaintiff, rather than the damages involved in the appropriation of these property rights, the courts began to evolve the theory of an independent right of privacy and to hold that in certain situations it was not necessary to first establish any property rights." (emphasis added)
In Continental Optical Co. v. Reed, 119 Ind. App. 643, 86 N.E.2d 306, 88 N.E.2d 55, 14 A.L.R.2d 743 (App. Ct. 1949), plaintiff had been a member of the United States Army attached to a mobile optical unit. While in such capacity the War Department had taken his picture as part of the program of home-front morale. After release from the Army he went into the optical business and the picture referred to was used by defendant, a manufacturer of optical lenses, in advertising its products. In his complaint *343 plaintiff alleged that by such conduct his "privacy has been invaded and he has been deprived of the commercial value of advertisement of his skill and ability, all to his damage in the sum of $25,000." The court held that plaintiff may have lost his right of privacy with respect to the picture insofar as it was used by military authorities, but such waiver did not extend "into a license to private business to use the same for advertising its wares for individual profit." Defendant optical company contended that in this kind of a suit the damages were limited to compensation for embarrassment, humiliation and mental pain. The appellate court disagreed, but in any event held that the jury verdict of $25,000 was excessive and reduced it to $1,000. One judge dissented.
Neither space nor time permit analysis of the myriad cases which treat of the subject here involved.[4] The authorities herein cited contain annotations and citations to which reference may be made. Suffice it to say that the confusion of remedy, i.e., the emphasis on the aspect of "injury to feelings," has tended to lose "the forest for the trees." The property aspect of suits involving appropriation for commercial advantage has been obscured.
Gordon, op. cit., finds comfort in the fact that in the cases of Haelan Laboratories v. Topps Chewing Gum, 202 F.2d 866 (2 Cir. 1953); Manger v. Kree Institute, 233 F.2d 5 (2 Cir. 1956), and Ettore v. Philco Television Broadcasting Corp., supra, 229 F.2d 481, it is recognized that, at least with respect to public figures, it is property which is involved, rather than privacy. The latter decision of the Third Circuit found occasion to interpret New Jersey law under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court, citing McGovern v. Van Riper, Frey v. Dixon, Vanderbilt v. Mitchell, and Edison v. Edison Polyform, all supra, found that the courts of New *344 Jersey look toward the protection of a right of privacy and toward the protection of a right of property, as well. New Jersey has had occasion very recently to reaffirm its recognition of the property aspects to be protected under the umbrella of privacy in the case of Palmer v. Schonhorn Enterprises, supra, which likewise contains a comprehensive reference to the source material for study of this problem.
Gordon concludes that we have come "full circle" with relation to property rights in the field of privacy. From the doctrine of Warren and Brandeis, originally premised on property or contract rights, but advocating a right independent of them, through the recognition in the early cases of an independent right of privacy premised on intangible property rights, we have come to the more recent decisions wherein recovery was allowed on the basis of property rights alone, outside the scope of privacy as such, and where the element of injured feelings was entirely absent. Gordon, op. cit., at pp. 605, 606.
As against this background, we examine defendant's argument that a suit for invasion of right of privacy is an action for "injury to feelings" and therefore is an injury to the person within the meaning of the two-year statute of limitations. As support defendant cites the cases of Bernstein v. National Broadcasting Co., 129 F. Supp. 817 (D.D.C. 1955), affirmed 98 U.S. App. D.C. 112, 232 F.2d 369 (D.C. Cir. 1956); Reed v. Real Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (Sup. Ct. 1945); McGovern v. Van Riper, supra; Samuel v. Curtis Publishing Co., 122 F. Supp. 327 (D.C.N.D. Cal. 1954); and O'Brien v. Pabst Sales Co., 124 F.2d 167 (5 Cir. 1940).
All of the cases cited by defendant are typical examples of those decisions which have served to obscure the "property" aspects of the "right of privacy". Gordon, op. cit., at pp. 554, 555. All of them were premised on a claim for injury to feelings rather than for the appropriation for commercial exploitation of property rights of name, likeness, etc. Thus, in Reed the court, as against plaintiff's contention that the *345 invasion of his right of privacy was a "property" right, is careful to point out that "As alleged, plaintiff's cause based on the invasion of his right of privacy does not involve any property right." (162 P.2d, at p. 137; emphasis added). It is clear that the court, because plaintiff sued only for "injury to feelings," was considering the right of privacy purely in the sense of it being the distinct right, "independent" of any rights of property. The court further said:
"What we have said does not mean that the cause of action for an invasion of the right of privacy may not involve property or contract rights. The doctrine has been asserted as applying in cases where photographs belonging to the plaintiff were wrongfully published in violation of an implied contract, or where the photographs were procured through trespass. 138 A.L.R. 33. But these decisions are not predicated upon `the right of privacy as an independent legal concept.' 138 A.L.R. 33. In the case at bar, no allegations appear in the complaint to bring the case within the view that either a `property' or `contract' right was violated. There is no claim that the photograph published was plaintiff's personal property, or that its value is involved, or that the defendants violated any implied contract. The claim is for damages for mental pain and annoyance resulting from the unauthorized publication of plaintiff's picture." (162 P.2d, at p. 138; emphasis added)
It is equally clear, then, that there was no consideration of the possible property rights which may have been involved in the appropriation by the defendant of plaintiff's photograph.
In Bernstein the court cited Reed to the effect that the gravamen of an action for invasion of privacy was for "injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication." But, as said above, Reed recognized the "property" rights involved in "privacy," but abjured their application because not pleaded. In particular, the court did not consider that aspect of right of privacy which Prosser has labeled as his classification (4), i.e., an appropriation of plaintiff's likeness for the commercial benefit of the defendant. The holding of the case was, in any event, that there was not sufficient identification of *346 plaintiff in the telecast involved so as to warrant recovery. See Gordon, op. cit., at p. 592, fn. 172.
In the New Jersey case of McGovern v. Van Riper, supra, 137 N.J. Eq. 24, plaintiff attempted to enjoin dissemination of his fingerprints by defendant officials. Defendant quotes from page 32 of McGovern:
"* * * the right of privacy exists as an independent right and * * * it is not merely an incident to some other long recognized rights such as those of property or contract."
A reading of the quoted language indicates that the court was not excluding "property rights" in privacy. Because the right of privacy "is not merely an incident" to "property" (emphasis added) it does not follow that it may not be an incident to a property right. Indeed, Vice-Chancellor Kays, whose language is quoted in defendant's brief, referred with approval to Judge Gray's dissent in Roberson v. Rochester Folding Box Co., supra, as well as Edison v. Edison Polyform & Mfg. Co., supra, both of which recognize the property aspects of privacy. In any event, the wrong done was in Prosser's classification (1) above (intrusion), and clearly had nothing to do with appropriation for commercial benefit.
In Samuel v. Curtis Publishing Co., supra, 122 F. Supp. 327, again the sole emphasis was that the publication of plaintiff's picture might offend the "sensibilities of a normal person." No allegation of appropriation for commercial purposes was made and it is clear that the court treated the case as under Prosser's classification (2), i.e., "public disclosure of private facts," wherein the limitation on liability is that "the matter made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities." Prosser, op. cit., at p. 836. Further, in Samuel the court held that there was no invasion of privacy where the photograph portrays nothing to shock the ordinary sense of decency and there is nothing uncomplimentary or discreditable in the photograph itself. This, of course, is not the law of New Jersey, at least in an appropriation case. *347 Cf. Palmer v. Schonhorn Enterprises, supra, where references to plaintiffs were indeed not uncomplimentary. The observation by the court in Samuel demonstrates, however, that it prescinded from any concept of a property right in privacy such as is recognized in the New Jersey cases, including Edison and Palmer.
The case which most forcefully points up the weakness in defendant's argument is O'Brien, supra, 124 F.2d 167, also cited by defendant. Indeed, it is a case which Gordon points out as a "prime example" of the consequences of confusion of remedy (involving a suit based on injury to feelings rather than appropriation). Gordon, op. cit., at p. 564. The court held that there was no invasion of privacy in defendant's use of plaintiff's picture in a beer advertisement, saying that plaintiff, as a prominent football player, had, through the publicity department of his university, actually consented to the use of his picture. The majority of the court makes it plain that its finding would have been otherwise if the suit had been brought for "appropriation" rather than injury to the feelings. The majority said:
"Nothing in the majority opinion purports to deal with or express an opinion on the matter dealt with in the dissenting opinion, the right of a person to recover on quantum meruit, for the use of his name for advertising purposes. That was not the case pleaded and attempted to be brought. The case was not for the value of plaintiff's name in advertising a product but for damages by way of injury to him in using his name in advertising beer. Throughout the pleadings, the record and the brief, plaintiff has uniformly taken the position that he is not suing for the reasonable value of his endorsement of beer, on the contrary, the whole burden of his pleading and brief is the repeated asseveration, that he would not and did not endorse beer, and the complaint is that he was damaged by the invasion of his privacy in so using his picture as to create the impression that he was endorsing beer." (at p. 170; emphasis added)
The dissent by Circuit Judge Holmes makes the pointed observation:
"Appellant's pleadings allege facts that entitle him to recover for either a violation of his right of property or right of privacy, and *348 because the court does not think he is entitled to recover for the latter does not relieve us of the duty of deciding whether or not any right of property was violated. He alleges that he has never given any person, firm, or corporation any right or permission to use or display his picture in the way it was used, and alleges further that its use by the appellee was in wanton disregard of `the rights or privacy of this plaintiff.'
The facts out of which the law of this case arises were alleged in the complaint. It appears therefrom that the appellee committed a tort in misappropriating a valuable property right of appellant." (at p. 171; emphasis added)
The dissent would further hold that, however inartistically the cause of action was alleged, the court should apply the proper law to the facts, and since the facts warranted an action for misappropriation of a valuable property right of plaintiff, recovery should have been allowed.
The only case our research has been able to uncover which passes upon the question here, in the context of a statute of limitations, is Hull v. Curtis Publishing Co., 182 Pa. Super. 86, 125 A.2d 644 (Super. Ct. 1956). There the court held that an action for invasion of "right of privacy" is one for injury to the person and governed by the two-year statute of limitations applicable to such cases in Pennsylvania. The opinion does not indicate whether the complaint was based on the theory of "appropriation," as distinguished from "right of privacy" in the independent sense. But it is apparent that the court construed the right solely in the latter sense. The court acknowledged, as so many other courts have done, the vagueness and uncertainty as to the nature of the concept of privacy, and the various theories upon which it has been based. Premising its understanding of the concept upon the proposition that "a man's feelings are as much a part of his personality as his limbs," and citing Bernstein v. National Broadcasting Co., supra, and Reed v. Real Detective Publishing Co., supra, the court held that the action was one for injury to the person. As we have pointed out above, Bernstein and Reed are typical of those cases which have looked at the action solely as *349 one for "injury to the feelings" while ignoring the aspect of appropriation typical in a case where a defendant used plaintiff's likeness and name for commercial use. The court clearly indicated that it looked upon the suit as one for wrongful "intrusion * * * `"in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."' Smith v. Doss, supra [251 Ala. 250, 37 So.2d 118, 120]." (125 A.2d, at p. 650).
Insofar as the present case involves "appropriation," it is not based upon "intrusion"  a classification which Prosser puts quite apart from that of "appropriation." Further, the Pennsylvania court cited from Ettore v. Philco Television Broadcasting Corp., supra, wherein Chief Judge Biggs said that:
"By and large the right invaded is a very personal one, really `the right to be let alone' described by Warren and Brandeis, and not a property right at all." (229 F.2d, at p. 487)
However, the Third Circuit Court in Ettore was called upon to decide the nature of the right of privacy as recognized in New Jersey. As said above, it held that "New Jersey look[s] toward protection of a right of privacy and toward the protection of a right of property as well, as the circumstances require" (emphasis added), citing, among others, the case of Edison v. Edison Polyform & Mfg. Co., supra. Further, the position of the Pennsylvania court in rejecting the distinction between trespass vi et armis and trespass on the case as an aid in determining the meaning of "injury to the person," is directly contrary to that of our Supreme Court in Earl v. Winne, 14 N.J. 119 (1953), where our court accepted the common law background of those actions as determining the meaning of "injuries to the person," because the common law and legislative history, being the source of the statutory words, do reflect the meaning intended by the Legislature. Indeed, if the New Jersey statute contained the same words as the Pennsylvania statute *350 (i.e., "injury wrongfully done to the person, in case where the injury does not result in death"), we would find little difficulty in construing the words as meaning "physical injuries," from which alone death may ensue.
With all due respect to the Pennsylvania court, we therefore respectfully disagree with the result in Hull v. Curtis Publishing Co., supra, because it was premised solely on the right of privacy as an action for "injury to feelings"  for intrusion  and not for "appropriation" by defendant for its commercial benefit.
It is true that many of the cases within the classification of "appropriation" for commercial benefit involve "public figures," for the value of their name in the market place is greater than that of one not a public figure. The distinction, however, is relevant only to the question of damages. As Gordon says:
"* * * a similar rationale applies when pecuniary values are created by the commercial exploitation of a non-professional or one not a public figure.

* * * * * * * *
In the case of one not a public figure or one who makes himself a public figure by his own act, such as the commission of a crime, we have a situation where there is no pecuniary or market value in the name, likeness, etc., of such a person until the defendant, by unlawfully appropriating the property rights in these aspects of plaintiff's personality, establishes a pecuniary value and a market for them (though the plaintiff has never attempted to market them). In such a case, the damages would be measured by the value to the defendant and, in a suit on the basis of unjust enrichment, would be that portion of the profits accruing to the defendant to which a court or jury decides plaintiff is entitled, commensurate with his role in and importance to the commercial enterprise." (Op cit., at p. 611)
And in many of the cases enforcing the "right of privacy" in the contex of "appropriation," the plaintiffs were not public figures. E.g., Pavesich and Munden v. Harris, supra, and Eick v. Perk Dog Food Co., 347 Ill. App. 293, 106 N.E.2d 742 (Sup. Ct. 1952).
*351 In any event, it seems to us that however little or much plaintiff's likeness and name may be worth, defendant, who has appropriated them for his commercial benefit, should be made to pay for what he has taken, whatever it may be worth.
In essence, defendant's contentions, if sustained, would carry into New Jersey the confusion which has been compounded by the fact that plaintiffs in other jurisdictions have based their actions in so-called "right of privacy" cases solely upon "injury to feelings," without recognizing the basic property rights involved, as they were recognized before and after the Warren-Brandeis historic article. Defendant, as do many of the decisions, fails to appreciate the distinctions among the four classifications of right of privacy put forth by Prosser, or among the three classifications suggested by Dean Leon Green in his article, "The Right of Privacy," 27 Ill. L. Rev. 237.
Entirely apart, however, from the metaphysical niceties, the reality of a case such as we have here is, in the court's opinion, simply this: plaintiffs' names and likenesses belong to them. As such they are property. They are things of value. Defendant has made them so, for it has taken them for its own commercial benefit. As said in Munden v. Harris, supra:
"If there is value in it, sufficient to excite the cupidity of another, why is it not the property of him who gives it the value and from whom the value springs?" (134 S.W., at p. 1078)
New Jersey has always enjoined the use of plaintiff's likeness and name on the specific basis that it was a protected property right. Edison and Palmer, supra. It is as much a property right after its wrongful use by defendant as it might be before such use. If it is sufficiently a right of "property" to prevent its use, why should it not also be *352 such a right when damages are sought? For the latter wrong there should likewise be a remedy, i.e., damages.[5]
We therefore hold that, insofar as plaintiffs' claim is based on the appropriation of their likeness and name for defendant's commercial benefit, it is an action for invasion of their "property" rights and not one for "injury to the person."
Granting that plaintiffs' action for invasion of their "property" rights is not barred by N.J.S. 2A:14-2, is that aspect of their claim which alleges that they have "suffered mental distress" barred? To put it another way, because plaintiffs allege "injury to feelings" as part of their damages, does the action fall within the two-year statute, even though the "appropriation" by defendant was a violation of plaintiffs' "rights"? This leads us to the question as to what is encompassed within the phrase "injury to the person" as contained in N.J.S. 2A:14-2. That phrase has been construed in analogous situations in Kearney v. Mallon Suburban Motors, 23 N.J. Misc. 83, 41 A.2d 274 (Cir. Ct. *353 1945); Crane v. Ketcham, 83 N.J.L. 327 (Sup. Ct. 1912); McGrath v. Keenan, 24 N.J. Misc. 121, 46 A.2d 725 (C.P. 1946), and Earl v. Winne; supra. See also Cabakov v. Thatcher, 27 N.J. Super. 404 (App. Div. 1953).
Kearney, McGrath and Earl were suits for malicious prosecution, Crane for alienation of a wife's affections. In both of said causes of action one of the major elements of damages is humiliation, embarrassment, mental suffering, wounded sensibilities, etc. 34 Am. Jur., Malicious Prosecution, § 95, p. 761; 27 Am. Jur., Husband and Wife, § 543, p. 141; Dombroski v. Metropolitan Life Ins. Co., 18 N.J. Misc. 240, 12 A.2d 372 (Sup. Ct. 1940), affirmed 126 N.J.L. 545 (E. & A. 1941). If, therefore, actions for malicious prosecution and alienation of affections are not to be barred by the two-year statute, even though the damages included those for "injury to feelings," then, by analogy, that factor should not be considered as departmentalizing the instant cause of action as one for "injury to the person" within the meaning of N.J.S. 2A:14-2.
In Kearney defendant moved for judgment on the ground that the action was one for "injuries to the person" under the then form of the relevant statute of limitations, R.S. 2:24-2. Circuit Judge William A. Smith held that the phrase "injuries to the person"
"* * * means physical injury and that actions on the case, other than physical injuries covered by section 2 and actions for libel and slander covered by the present section 3, 2:24-3, which is a one-year limitation, are still covered by the six-year limitation contained in the first section of the present revision.
The gist of the action of malicious prosecution is for an injury to the personal rights as distinguished from injuries to the person. Subsequent arrest and imprisonment are matters of damage but not necessary to be sustained in order to give right to the action of malicious prosecution in so far as the charge that the criminal actions was maliciously prosecuted. Hammill v. Mack International Motor Truck Corp., 104 N.J.L. 551, 141 A. 775.
It is my conclusion that the statute of limitations applying to the action for malicious prosecution is section 2:24-1, fixing the period of limitation as six years, and that this action now before the court *354 is not barred by the statute of limitations." (23 N.J. Misc., at p. 88; emphasis added)
Judge Smith reviewed the history of the statute and cited, among other cases, the case of Crane v. Ketcham, supra, an action for alienation of a wife's affections.
In Crane Justice Swayze had also examined the legislative history of the then pertinent P.L. 1896, p. 119, governing actions for "injuries to persons." He distinguished between the phrase "injury to the person" and "injury to personal rights," saying that they were not equivalent  that "injuries to the person" are less extensive in meaning than "injuries to personal rights." He further held that an action for alienation of affections was an "action upon the case" and, as such, was governed by the six-year statute rather than the two-year statute of limitations.
In McGrath, supra, likewise an action for malicious prosecution, the court held that it was an "action on the case" within the six-year statute and was not an "action for injury to the person" under R.S. 2:24-2.
Earle v. Winne, supra, 14 N.J. 119, was an action for malicious prosecution, false arrest and libel. The Supreme Court, citing Kearney v. Mallon Suburban Motors and McGrath v. Keenan, supra, with approval, held that the action for malicious prosecution was governed by the six-year statute and not the two-year statute, as contended by defendant. It based its decision on the ground that at common law the action for malicious prosecution was "an action on the case" and not the kind of an action pursued by an action of trespass vi et armis. Specifically construing the words "injury to persons" in N.J.S. 2A:14-2, the Supreme Court held that the phrase comprehended those common law actions which were pursuable by trespass vi et armis, and since that was not the remedy, at common law, for malicious prosecution, the action was not an action for "injury to persons." Justice Oliphant, speaking for the court, said:
*355 "At the common law the remedy to recover damages for immediate wrongs accompanied by force to the person, by menace, assault, battery, wounding, mayhem or false imprisonment, was not by an action in simple trespass or on the case but by an action of trespass vi et armis. 1 Tidd's Practice, supra, page [*]6; 1 Chitty on Pleading (16th ed.), page 1, 2 Chitty Blackstone [*]138. False imprisonment was redressable as an immediate wrong `* * * to the person' by an action of trespass vi et armis, and the limitation on this action was four years.
On the other hand, redress for the malicious prosecution of civil suits or criminal charges and malicious abuse of process was by the common law action on the case. 1 Tidd's Practice, supra, page [*]6; 1 Chitty on Pleading, pages 149, 206. Under the common law there was a clear and basic distinction between the action of trespass vi et armis and the action on the case. The distinction was recognized in the difference in the periods of limitations in our original statute." (at pp. 129-130; emphasis added)

* * * * * * * *
Certainly it cannot be denied that the common law action for trespass vi et armis was comprehended by the phrase `injury to persons caused by wrongful act * * *' or that action for false imprisonment likewise was so included. * * *" (at pp. 130-131)
Applying the same principle, the court held that the action for false imprisonment was an action for injury to the person and therefore governed by the two-year statute. So here, since this action for "invasion of privacy" involves no "force to the person," it would not have been enforceable by trespass vi et armis and is not comprehended within the phrase "injury to persons" contained in N.J.S. 2A:14-2. Therefore, it falls within the language of N.J.S. 2A:14-1, a "tortious injury to the rights of another not stated in section[s] 2A:14-2," and is not barred until six years after the cause of action accrued. Defendant's motion for summary judgment on this ground is denied. This disposition renders moot defendant's motion to strike plaintiffs' pleas in avoidance of the statute of limitations.

SUFFFICIENCY OF THE COMPLAINT (Grounds (a) (2) and (3))
By application of the "ordinary sensibilities" test, defendant contends that the complaint of the adult plaintiffs should *356 be dismissed. As to the infant plaintiffs it is claimed that, as a matter of law, they were "too young" to be injured. Defendant states:
"The mere fact that defendants have used the reprint in question which contained a photograph of plaintiffs and an article about them does not, in and of itself, give rise to an action for the invasion of right of privacy. Plaintiffs must show that such use would offend the ordinary sensibility of a normal person and that they have been so offended."
The contention is that, as a matter of law, "an individual of ordinary sensibilities would not be injured by the publication complained of herein."
But defendant omits the critical fact that its use here was for commercial advertising purposes. None of the cases cited by defendant on this point involves such exploitation. They do demonstrate that, if such use were involved, the holding would be contrary to defendant's contention. Thus, defendant cites Samuel v. Curtis Publishing Co., supra, 122 F. Supp. 327. In Samuel there was no use by defendant of plaintiff's photograph for advertising purposes, and it was held that the publication was in the "public interest." Not so here. More significant is the fact that Samuel applied California law and based its holding on the case of Gill v. Hearst Publishing Co., 40 Cal.2d 224, 253 P.2d 441 (Sup. Ct. 1953).
In Gill the majority took pains to point out:
"In so concluding, it must be remembered that there is no contention here that the publication of plaintiffs' photograph was for advertising or trade purposes. 41 Am. Jur., Privacy, sec. 22, p. 941; e.g. Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101; Kunz v. Allen, 102 Kan. 883, 172 P. 532, L.R.A. 1918D, 1151 also 26 Southern Cal. Law Rev. 102, 103." (253 P.2d, at p. 445)
Further, while the majority in Gill would hold that the mere publication of an innocuous photograph would not, of itself, constitute an invasion of privacy, it nevertheless held *357 that when accompanied by a magazine article which a jury could find to be offensive, a cause of action was stated. In a persuasive dissent Justice Carter, who had written the opinion for an unanimous court in the companion case of Gill v. Curtis Publishing Co., 38 Cal.2d 273, 239 P.2d 630 (Sup. Ct. 1952), held that the complaint, based upon the publication of the photograph itself, did state a cause of action for invasion of privacy.
Prosser mentions the "ordinary sensibilities" test only with respect to his classifications (1), (2) and (3), supra. Significantly, he omits any such consideration under classification (4), i.e., appropriation.
Defendant also cites Wright v. R.K.O. Radio Pictures, 55 F. Supp. 639 (D.C. Mass. 1944), for the proposition that to constitute an invasion of privacy the intrusion must "tend to discredit the plaintiff in the view of a considerable and respectable class in the community", thus equating privacy to libel or slander. The principle stated appears to be indigenous to Massachusetts, which is among those few states which still resist recognition of a "right of privacy" at all. Prosser, op. cit., p. 832, fn. 48; Lahr v. Adell Chemical Co., 300 F.2d 256 (1 Cir. 1962). It is not the law of New Jersey, and we are cited to no other state which supports the proposition. In our State the right of privacy is protected, even though there is nothing uncomplimentary in the publication sued upon. E.g., Palmer v. Schonhorn Enterprises, supra. The authorities are replete with instances of similar holdings in other states. E.g., Olan Mills, Inc. of Texas v. Dodd, 234 Ark. 495, 353 S.W.2d 22 (Sup. Ct. 1962); Pallas v. Crowley, Milner & Co., 322 Mich. 411, 33 N.W.2d 911 (Sup. Ct. 1948), and Continental Optical Co. v. Reed, supra.
We therefore hold that the "ordinary sensibilities" test is irrelevant to this "appropriation" case, except insofar as the innocuous nature of the publication in itself, as distinguished from its use in advertisement exploitation, may relate to the extent, if at all, that plaintiffs suffered *358 injury to feelings, humiliation, etc. These are fact issues, not disposable as a matter of law. So, too, as to whether infant plaintiffs were too young to have suffered mental stress.[6] Defendant's motion to strike the complaint and for summary judgment on this ground is therefore denied.

PLAINTIFFS' ALLEGED "CONSENT" TO THE USE OF THEIR NAMES AND LIKENESS (Ground (a) (4))
It is true that a plaintiff may waive his right of privacy by consent to a publication of his photograph. Defendant contends that because plaintiffs consented to the publication of their photograph, with accompanying article, in the Jersey Journal, they have waived the right of privacy with respect to the further publication (with defendant's trade mark) by its salesmen for advertising purposes. But:
"If the actual invasion goes beyond the contract, fairly construed, as for example by alteration of the plaintiff's picture, or publicity differing materially in kind or in extent from that contemplated, or exceeding the authorized duration, there is liability." (Prosser, op. cit., at pp. 850-851)
Many of the cases in which the right of privacy has been protected are instances where plaintiff had consented to his or her photograph being taken in the first instance, but because defendant then used the photograph for a further and different purpose, for its own commercial benefit, it is held that there is no waiver or consent for such latter use. See Pavesich v. New England Life Ins. Co., supra, 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101; Continental Optical Co. v. Reed, supra, 119 Ind. App. 643, 86 N.E.2d 306 ("a waiver of the right justifies an invasion of privacy only to the extent warranted by the circumstances which brought about the waiver." 86 N.E.2d p. 309); Smith v. WGN, Inc., 47 Ill. App.2d 183, 197 N.E.2d 482 (App. Ct. 1964); *359 Ettore v. Philco Television Broadcasting Corp. supra, 229 F.2d 481; Sinclair v. Postal Tel. & Cable Co., 72 N.Y.S.2d 841 (Sup. Ct. 1935); Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849 (Ct. App. 1912); Annotation 14 A.L.R.2d 167 (1950); and Prosser, op. cit., at p. 850.
Defendant's motion on this ground is likewise denied.
NOTES
[1] Hereinafter referred to as Prosser's classifications (1), (2), (3) and (4).
[2] See comprehensive opinion of Horn, J.S.C., in Palmer v. Schonhorn Enterprises, supra.
[3] This case probably should have been cited as 72 N.J. Eq. 910 (E. & A. 1907), which reversed 71 N.J. Eq. 632.
[4] But see: Annotations, 14 A.L.R.2d 751 (1950), 168 A.L.R. 446 (1947), 138 A.L.R. 22 (1942).
[5] On this motion for summary judgment the question as to what damages, and the elements thereof, recoverable in such an action is not before the court and we do not decide it. It is not without difficulty. Prosser says that in an action for "appropriation" the element of plaintiff's feelings "is not to be ignored," citing Foster-Milburn Co. v. Chinn, 134 Ky. 424, 120 S.W. 364, 34 L.R.A., N.S., 1137 (1909). Prosser. op. cit., at p. 842. It has been suggested that damages may be based upon quantum meruit, or perhaps the commercial value of the use of the names and likeness in the advertising field. See also the majority and minority opinions in O'Brien v. Pabst Sales Co., supra; Gordon, op cit., at pp. 598-605 and cases cited therein (with reference to suits by survivors for value of property right of decedent appropriated by defendant), and also pp. 610-612 (as to value of property right involving persons not public figures). See also Continental Optical Co. v. Reed, supra; Bunnell v. Keystone Varnish Co., 254 App. Div. 885, 5 N.Y.S.2d 415 (affirming 1938); Myers v. United States Camera Publishing Corp., 9 Misc.2d 765, 167 N.Y.S.2d 771; Manger v. Kree Institute, supra. Intense research is required and counsel are forewarned to be prepared on the question of damages, and their elements, when the matter comes on for trial. The pretrial order should provide for briefs on this question.
[6] Cf. Munden v. Harris, supra, 153 Mo. App. 652, 134 S.W. 1076, at pp. 1080, 1081 (re capacity of infant plaintiffs to be libeled).